Stephanie DICKERSON, Plaintiff,

v.

George STUART, in his official capacity as the Director of the Florida Department of Business and Professional Regulation, and Leonard R. Rochefort, in his official capacity as Investigator Supervisor, Bureau of Investigative and Consumer Services, Region V, Department of Business and Professional Regulation, Defendants.

No. 94–1193–Civ–Orl–22.

United States District Court,
M.D. Florida,
Orlando Division.

Feb. 10, 1995.

Jeffery T. Kipi, Oviedo, FL, for plaintiff.

Stephanie A. Daniel, General Counsel's Office, Dept. of Legal Affairs, Tallahassee, FL, for defendants.

## ORDER

CONWAY, District Judge.

This cause comes before the Court on Plaintiff's Motion for Preliminary Injunction (Dkt. 3), Plaintiff's Motion for Waiver of Posting a Security Bond in Obtaining a Preliminary Injunction (Dkt. 6), and Defendants' Motion to Dismiss (Dkt. 15).

## I. STATEMENT OF FACTS

The Plaintiff, in accordance with her religious beliefs, prays for, encourages, and assists parents in giving birth to their children at home. Plaintiff alleges that she advises and renders assistance to parents concerning home childbirth before, during, and after pregnancy. Plaintiff provides information about giving birth at home, and instructs the father on the specifics of childbirthing. Plaintiff occasionally gives a "helping hand" to support the mother during the birth, but alleges that she only handles or touches the newborn in "emergency situations."

Plaintiff further alleges that she does not hold herself out as a "midwife" and is not a licensed midwife in Florida. Plaintiff, a resident of Florida, was informed on September 28, 1994 that she was being investigated by the Defendants for alleged violations of Florida's Midwifery Practice Act, Fla.Stat.Ann. § 467.001 et seq. (West 1991 & Supp.1995).

Plaintiff plans and desires to continue advising and rendering assistance to parents about childbirthing at home, in accordance with her religious beliefs. Plaintiff alleges that Defendants' threats of criminal prosecution have a chilling effect on Plaintiff's rights of free expression and freedom of religion under the U.S. Constitution, and additional rights guaranteed to Plaintiff under the Constitution of the State of Florida. Plaintiff brings her action under the U.S. Constitution and under federal law, including 42 U.S.C. § 1983.

In Plaintiff's Preliminary Injunction, Plaintiff seeks an order enjoining Defendants from enforcing or threatening to enforce Florida's Midwifery Practice Act against her. The Defendants move to dismiss Plaintiff's Complaint on the ground that it fails to state a claim upon which relief can be granted.

## II. ANALYSIS

The Court finds that Plaintiff's Complaint fails to state a cause of action for violations of her constitutional rights.

Fla.Stat.Ann. § 467.001–.209 (West 1991 & Supp.1995) is the Florida statute at issue in this case. The statute contains a statement of legislative intent, definitions, licensing requirements, and laws pertaining to the practice of midwifery in Florida.

Plaintiff alleges that this statute is unconstitutional on its face and in its application to the Plaintiff in that: (1) § 467.003(8) is unconstitutionally vague, in that the statute does not define the terms "advising" and "rendering," thus leaving individuals to guess at its meaning and permitting administrators to differ as to its application; (2) § 467.002 places an excessive and undue burden on free speech in that it requires individuals to obtain a license from the Defendants in order to speak about midwifery (i.e., the statute is an impermissible prior restraint); and (3) the statute is overbroad and intrudes upon Plaintiff's First Amendment rights of free speech and freedom of religion. See Complaint, ¶ 17 (Dkt. 1).

### A. Motion to Dismiss

■ The accepted rule is that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80, 84 (1957). A trial court, in ruling on a motion to dismiss, is required to view the complaint in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The material allegations of the complaint are taken as true for the purpose of deciding a motion to dismiss. St. Joseph's Hospital v. Hospital Corp. of America, 795 F.2d 948 (11th Cir.1986).

The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free

exercise thereof; or abridging the freedom of speech ..." [1]  U.S. Const. amend. I.

### 1. *Free exercise of religion*

■ Plaintiff argues that the challenged statute violates her First Amendment right to freedom of religion. The Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb *et seq.* (1993), describes the conditions under which a government may and may not constitutionally burden religious exercise. By this Act, Congress restored the application of the compelling interest standard as set forth in *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) for all cases where the free exercise of religion is substantially burdened.

■ A plaintiff alleging a violation of her First Amendment right to free exercise of religion must first show that the government has substantially burdened that right. As the Ninth Circuit has recently restated:

[t]o show a free exercise violation, the religious adherent ... has the obligation to prove that a governmental [action] burdens the adherent's practice of his or her religion by pressuring him or her to commit an act forbidden by the religion or by preventing him or her from engaging in conduct or having a religious experience which the faith mandates. This interference must be more than an inconvenience; the burden must be substantial.... *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1393 (9th Cir.1994), *quoting Graham v. C.I.R.*, 822 F.2d 844, 850–1 (9th Cir.1987), *aff'd sub nom. Hernandez v. Commissioner*, 490 U.S. 680, 699, 109 S.Ct. 2136, 2140, 104 L.Ed.2d 766 (1989).

■ In the present case, Plaintiff has not shown a substantial burden of her religious freedom. Accepting as true that Plaintiff's

religion favors home births, there is nothing in Florida's Midwifery Practice Act which prohibits Plaintiff from praying for others to have home childbirth. Nothing in the challenged Act prohibits Plaintiff from sharing her belief that people should have home births. All that the statute prohibits is an unlicensed individual from engaging in the practice of supervising and advising on the progress of normal labor and childbirth, and rendering care to the pregnant mother.

Moreover, Plaintiff does not allege that her ability to obtain a midwifery license is conditioned on any factor relevant to the practice of her religion. Plaintiff does not allege that, in order to obtain a midwifery license in Florida, she will have to perform acts forbidden by her religion, or that, having obtained a license, she would thereafter be prohibited from practicing her religion.

■ Assuming for the sake of argument that Plaintiff has shown a substantial burden on the exercise of her religion, the Florida Midwifery Practice Act survives scrutiny under the compelling interest test. As stated above, Congress has recently restored the compelling interest standard as the test for evaluating governmental interference with First Amendment religious freedoms. *See* Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb *et seq.* (1993). Under this test, statutes which substantially burden religious exercise must be justified by a compelling state interest and must be narrowly tailored to achieve that interest. *Sherbert v. Verner*, 374 U.S. 398, 403, 83 S.Ct. 1790, 1793, 10 L.Ed.2d 965 (1963).

The State of Florida has a compelling interest in the health of expectant mothers and the safe delivery of newborn babies. See *Planned Parenthood of Southeastern Pa. v. Casey*, —— U.S. ——, ——, 112 S.Ct. 2791,

---

**1.** The Florida Constitution similarly provides that "[t]here shall be no law respecting the establishment of religion or prohibiting or penalizing the free exercise thereof," Fla. Const. art. 1, § 3, and "[n]o law shall be passed to restrain or abridge the liberty of speech...." Fla. Const. art. 1, § 4.

Florida courts have equated the scope of the Florida Constitution with that of the Federal Constitution in terms of the guarantees of freedom of speech and freedom of religious exercise.

See *Hermanson v. State*, 570 So.2d 322 (Fla.App. 1990) (per curiam) (freedom of religious exercise), *quashed on other grounds* 604 So.2d 775 (Fla.1992); *Florida Canners Ass'n v. State, Dep't of Citrus*, 371 So.2d 503 (Fla.1979) (freedom of speech), *aff'd* 406 So.2d 1079 (Fla.1981), *appeal dismissed* 456 U.S. 1002, 102 S.Ct. 2288, 73 L.Ed.2d 1297 (1982); *State ex rel. Singleton v. Woodruff*, 13 So.2d 704 (Fla.1943) (en banc) (freedom of speech and freedom of religious exercise).

2804, 120 L.Ed.2d 674 (1992). In light of this compelling interest, Florida has a demonstrated need to regulate in this field. The Florida Legislature has also recognized "the need for a person to have the freedom to choose the manner, cost, and setting for giving birth." Fla.Stat.Ann. § 467.002 (West Supp.1995). Yet the danger of having untrained individuals supervising and overseeing home births is clear. A person lacking such training may very well miss symptoms of infection or disease and warning signs of labor complications, leading to endangerment of the health of both mother and newborn.

To avert this danger the State of Florida has authorized the training and licensing of midwives, who may supervise labor and childbirth. The Midwifery Practice Act provides in some detail the requirements for obtaining a midwifery license. These requirements include supervised care of expectant mothers, training in hospitals or alternative birth settings, and clinical and classroom instruction in a host of related fields such as obstetrics, gynecology, nutrition, nursing skills, embryology, and neonatology. *See* Fla.Stat.Ann. § 467.009 (West Supp.1995). These licensing requirements appear well-suited for achieving Florida's legitimate interest in having competent individuals supervise childbirth.

Plaintiff implies in her allegations that there exist less restrictive means of furthering Florida's compelling interest, but does not allege what those means are. Nor does Plaintiff allege how those less restrictive means would alleviate the burden on the exercise of Plaintiff's faith.

The Court concludes that the licensing requirement chosen by the State of Florida is narrowly tailored to achieve the protection of the health of mother and newborn, and thus passes scrutiny under the test set forth in *Sherbert.*

## 2. *Prior restraint*

Plaintiff argues that the disputed statute is an unconstitutional prior restraint on her freedom of speech.

### a. *Licensing requirement*

■ The Supreme Court has held that, "a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without, narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 150–1, 89 S.Ct. 935, 938, 22 L.Ed.2d 162 (1969). When considering the appropriateness of prior restraints, the concern is the existence of unbridled discretion in the hands of a government official or agency, because where there is unbridled discretion to grant or deny a license to engage in an activity, censorship may result. *City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 755–6, 108 S.Ct. 2138, 2143, 100 L.Ed.2d 771 (1988); *Sentinel Communications Co. v. Watts,* 936 F.2d 1189, 1198 (11th Cir.1991). A licensing process which operates as a prior restraint "avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system." *Freedman v. Maryland,* 380 U.S. 51, 58, 85 S.Ct. 734, 738–9, 13 L.Ed.2d 649 (1965); *Cf. FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 228, 110 S.Ct. 596, 606, 107 L.Ed.2d 603 (1990).

■ The licensing scheme in this case does not present the "dangers of a censorship system." The disputed statute requires that an individual have a midwifery license before making it a practice to advise parents about the progress of childbirth. The statute describes in what manner a license may be obtained, and there is not any "unbridled discretion" on the part of the licensing authority to grant or deny licenses on the basis of an applicant's religious beliefs, or any other expressed belief. On the contrary, the statute describes in some detail the requirements for obtaining a midwifery license. *See* Fla.Stat.Ann. §§ 467.009, 467.011 (West Supp.1995).

The present case does not implicate the sort of "unbridled administrative discretion" of which the Supreme Court and the Eleventh Circuit have disapproved in the past. This case is not analogous to one where a state requires films to be submitted to a Board of Censors in order to obtain a license

before the film can be distributed. *See Freedman v. Maryland,* 380 U.S. 51, 58, 85 S.Ct. 734, 738–9, 13 L.Ed.2d 649 (1965). Nor is this a comparable case to one where government officials have discretion to deny licenses to distribute newspapers and handbills in public. *See Miami Herald Pub. Co. v. City of Hallandale,* 734 F.2d 666, 675 (11th Cir.1984), *opinion clarified by* 742 F.2d 590 (11th Cir.1984). In short, Florida's Midwifery Practice Act shares little in common with those licensing statutes which raise the specter of censorship.

### b. Content-based speech restriction

■ Florida's Midwifery Practice Act restricts speech concerning the progress of childbirth. The statute is therefore a content-based regulation of speech. Cf. *Burson v. Freeman,* 504 U.S. 191, 196–97, 112 S.Ct. 1846, 1850, 119 L.Ed.2d 5 (1992). Content-based speech restrictions are disfavored under the First Amendment jurisprudence, and a State must justify the restriction by showing that its regulation serves a compelling state interest and is narrowly drawn to achieve that interest. *Simon & Schuster, Inc. v. Members of the New York State Crime Victims Bd.,* 502 U.S. 105, 117, 112 S.Ct. 501, 509, 116 L.Ed.2d 476 (1991).

The State of Florida has a compelling interest in the health of expectant mothers and the safe delivery of newborn babies. See *Planned Parenthood of Southeastern Pa. v. Casey,* —— U.S. ——, ——, 112 S.Ct. 2791, 2804, 120 L.Ed.2d 674 (1992). The danger of having untrained individuals supervising and overseeing home births is clear. A person lacking such training may ill-advise an expectant mother as to nutrition, symptoms of infection or disease, and warning signs of labor complications. Such ill-advice substantially endangers the health of both mother and newborn.

In light of Florida's interest, the statute is narrowly drawn. The Midwifery Practice Act authorizes the training and licensing of persons who may advise expectant parents on the progress of the childbirth. The Act restricts speech only where such speech constitutes advice on the progress of childbirth, and removes this restriction where the speaker has obtained a midwifery license

through qualified training. This speech restriction serves Florida's legitimate interest of protecting the health of expectant mothers and newborns, and does not prohibit speech beyond the scope of that interest.

Therefore Florida's Midwifery Practice Act is a constitutionally acceptable regulation of speech.

### 3. Overbreadth

■ A clear and precise enactment is nonetheless overbroad if it prohibits constitutionally-protected speech or conduct. *Grayned v. City of Rockford,* 408 U.S. 104, 114, 92 S.Ct. 2294, 2302, 33 L.Ed.2d 222 (1972). "[I]n the area of freedom of expression an overbroad regulation may be subject to review and invalidation, even though its application in the case under construction may be constitutionally unobjectionable." *Forsyth County v. Nationalist Movement,* —— U.S. ——, ——, 112 S.Ct. 2395, 2400, 120 L.Ed.2d 101 (1992).

■ Plaintiff contends that three phrases in the statute are impermissibly overbroad. These three phrases all appear in the statute's definition of "midwifery." *See* Fla.Stat. Ann. § 467.003(8) (West 1991 & Supp.1995). Plaintiff argues that the statute does not define "advising the parents as to the progress of the childbirth." Plaintiff claims that this language "broadly bans all unlicensed speech regarding the progress of childbirth." *See* Plaintiff's Memorandum of Law, pp. 4–5 (Dkt. 4). Plaintiff also takes issue with the phrase "normal labor and childbirth," which the Plaintiff argues would prohibit the speech of those who counsel individuals who are considering giving birth to children. *See* Plaintiff's Memorandum of Law, pp. 4–5 (Dkt. 4). Lastly, Plaintiff contends that the phrase "rendering prenatal and postpartal care" prohibits all care for an expectant parent by any unlicensed individual. *See* Plaintiff's Memorandum of Law, pp. 4–5 (Dkt. 4).

A plain reading of the statute disposes of Plaintiff's arguments. "Childbirth" is defined in Fla.Stat.Ann. § 467.003(9) (West Supp.1995) in connection with the phrase "normal labor." This leaves "progress" and "advise" as the two key words not defined in

the first disputed provision. These words are not terms of art, and are used in their proper and understood dictionary senses. The phrase itself does not encompass any speech outside the scope of Florida's interest in the health of expectant mothers and newborn babies.

■ Plaintiff claims that the definition of "normal labor and childbirth" prohibits the counselling of individuals who are considering giving birth to children. The statute would prohibit the practice counselling of individuals where that counsel included a discussion of the "progress of childbirth," but there is no prohibition against counselling individuals as to whether to have children or to consider "biblical alternatives" to childbirth. All that the law prohibits, by its language, is advice on the "progress of the childbirth."

■ Plaintiff claims that the phrase "rendering prenatal and postnatal care" prohibits all care for an expectant parent by an unlicensed individual. The phrase "rendering prenatal and postnatal care" is directly preceded in the statute by the phrase "the practice of." Thus the act does not prohibit all care for an expectant parent, but regulates only *the practice* of giving care to an expectant parent.

■ Plaintiff also contends that the statute is overbroad because it "unduly burdens Plaintiff's right to advise women facing pregnancy to consider biblical alternatives for childbirth." *See* Plaintiff's Memorandum of Law, p. 4 (Dkt. 4). Defendants concede that the statute does not prohibit either the practice of counseling people about whether or not they should become pregnant or the sharing of beliefs about home delivery. *See* Defendants' Memorandum of Law, p. 17 (Dkt. 18).

The Court concludes that the language of the challenged statute does not reach as broadly as Plaintiff claims.

### 4. Vagueness

■ "An enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned,* 408 U.S. at 108, 92 S.Ct. at 2298. The standard for considering a void for

vagueness challenge is whether a person of common intelligence must necessarily guess at the statute's meaning. *Baggett v. Bullitt,* 377 U.S. 360, 367, 84 S.Ct. 1316, 1320, 12 L.Ed.2d 377 (1964). The law must give a person of reasonable intelligence the opportunity to know what is prohibited, so that she may act accordingly. *Grayned,* 408 U.S. at 108, 92 S.Ct. at 2298. The danger of a vague statute that affects First Amendment freedoms is that uncertain meaning leads citizens to " 'steer far wider of the unlawful zone' ... than if the boundaries of the forbidden areas were clearly marked." *Baggett,* 377 U.S. at 372, 84 S.Ct. at 1323, *quoting Speiser v. Randall,* 357 U.S. 513, 526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958). Yet the Supreme Court has also observed that, "[w]e can never expect mathematical certainty from our language." *Grayned,* 408 U.S. at 110, 92 S.Ct. at 2300.

■ The Plaintiff in the instant action argues that the Midwifery Practice Act is unconstitutionally vague in that "it proscribes any and all unlicensed speech concerning childbirth." Plaintiff's Memorandum, p. 6 (Dkt. 4). The statute, however, clearly defines "midwifery," and "childbirth," and prohibits only that speech where the speaker makes a practice of advising parents regarding the progress of childbirth, unless the speaker is properly trained and licensed. In *Grayned,* the Supreme Court upheld an antinoise ordinance against constitutional challenge, noting that while the enactment was not couched in terms of " 'meticulous specificity' ... we think it is clear what the ordinance as a whole prohibits." *Grayned,* 408 U.S. at 110, 92 S.Ct. at 2300, *quoting Esteban v. Central Mo. State College,* 415 F.2d 1077, 1088 (8th Cir.1969) (Blackmun, J.), *cert. denied* 398 U.S. 965, 90 S.Ct. 2169, 26 L.Ed.2d 548 (1970). Similarly, the Court thinks it is clear what Florida's Midwifery Practice Act prohibits.

### B. Motion for Preliminary Injunction and Motion for Waiver of Posting Security

The Court's granting of the Defendants' motion to dismiss renders moot Plaintiff's

motion for injunction and motion for waiver of posting security.

## III. CONCLUSION

The Court holds that Florida's Midwifery Practice Act is not an impermissible imposition on Plaintiff's free exercise of religion, an impermissible prior restraint of speech, or unconstitutionally vague or overbroad.

ACCORDINGLY it is **ORDERED** that Defendants' Motion to Dismiss (Dkt. 15) is **GRANTED** with prejudice.

It is **FURTHER ORDERED** that Plaintiff's Motion for Preliminary Injunction (Dkt. 3) is **DENIED** as moot.

It is **FURTHER ORDERED** that Plaintiff's Motion for Waiver of Posting a Security Bond in Obtaining a Preliminary Injunction (Dkt. 6) is **DENIED** as moot.

The Clerk is **DIRECTED** to close this file.

DONE AND ORDERED.