768 So.2d 1114 (2000)
FIRST BAPTIST CHURCH OF PERRINE, Petitioner,
v.
MIAMI-DADE COUNTY, etc., Respondent.
No. 3D00-40.
District Court of Appeal of Florida, Third District.
June 28, 2000.
Rehearing Denied October 18, 2000.
Liberty Counsel, and Mathew D. Staver and Erik W. Stanley, Longwood, for petitioner.
*1115 Robert A. Ginsburg, Miami-Dade County Attorney, and Jay W. Williams, Assistant Miami-Dade County Attorney, for respondent.
Before GERSTEN, and RAMIREZ, JJ., and NESBITT, Senior Judge.
RAMIREZ, J.
This petition for certiorari review is brought by the unsuccessful applicant for zoning special exceptions and variances. The circuit court, appellate division summarily denied certiorari review and thus confirmed the denial of the application by the Community Zoning Appeals Board of Miami-Dade County. We conclude that the applicant did not present sufficient, competent evidence to satisfy its burden of showing that its request met the applicable standards and criteria for the granting of special exceptions and non-use variances set forth in the Comprehensive Development Master Plan and the Metropolitan Miami-Dade County Zoning Code. Because of this failure of proof by the applicant, we hold that the circuit court, appellate division properly applied the correct law when it refused to quash the Zoning Board's decision. Thus, we deny the petition.
Petitioner First Baptist Church of Perrine runs a church-related school for kindergarten through sixth grade on its church property in Perrine, Florida. It sought two special exceptions and a sign variance from the county zoning authorities in order to expand the school to include the seventh and eighth grades and increase the number of students attending the school from 500 to 650. The County's zoning and planning department recommended the approval of the proposal and the Church then brought the matter for hearing before the Zoning Board.
The Church presented testimony and studies that concluded that only a minimal potential traffic congestion increase could be expected in the neighborhood surrounding the Church if the proposed expansions were permitted. The Church had already changed the school day beginning time at the suggestion of traffic specialists in an effort to minimize early morning congestion. The Church also presented testimony showing that it considered having a religious-based school a central part of its religious ministry, and that it was important to extend that schooling into the adolescent years by having grades seven and eight.
The neighboring residents opposed the planned expansion based on the potential for increased traffic and crime in the neighborhood should middle school grades be allowed at the school. In fact-based testimony before the Zoning Board, representatives of the neighborhood pointed out, and we agree, that the Church's traffic study was invalid and thus not probative of the zoning code's traffic impact and neighborhood quality protection standards because its projections of future neighborhood traffic congestion were flawed. Those projections were based on figures which took into account less than 100% of the number of additional students permitted at the school under the application. The residents also presented fact-based testimony calling into question the validity of the traffic study and the County's zoning and planning department's recommendation based on that study because it showed that the most frequently used ingress and egress from the school was by way of a non-arterial, neighborhood street, SW 170 Street, rather than the County arterial street, SW 168 Street, which bounded the Church/school property. Thus, the applicant failed to meet the criteria which require consideration of the neighborhood traffic impact arising from a requested special exception. See § 33-311(A)(3), (F)(1),(5), Miami-Dade County Code; CDMP, Traffic Circulation Element, objective 5.[1]
*1116 In our recent decision in Jesus Fellowship, Inc. v. Miami-Dade County, 752 So.2d 708 (Fla. 3d DCA 2000), which admittedly involved similar issues and facts, we stated as follows:
An applicant seeking special exceptions and unusual uses need only demonstrate to the decision-making body that its proposal is consistent with the county's land use plan; that the uses are specifically authorized as special exceptions and unusual uses in the applicable zoning district; and that the requests meet with the applicable zoning code standards of review. If this is accomplished, then the application must be granted unless the opposition carries its burden, which is to demonstrate that the applicant's requests do not meet the standards and are in fact adverse to the public interest.
Id. at 709. Here, unlike in Jesus Fellowship, although the Church arguably demonstrated that its application was consistent with the land use plan and that the uses were specifically authorized, its flawed traffic impact study failed to meet the zoning standards of review. The recommendation for approval of the application by the County's zoning and planning department was likewise flawed because it was based upon the erroneous finding that the Church's evidence, including the suspect traffic study, satisfied the criteria for special exceptions. The invalid conclusions contained in this evidence did not constitute competent evidence in support of the Church's application, and, therefore, the burden never shifted to the objectors, as it did in Jesus Fellowship, to show that the request did not meet the standards and were adverse to the public interest.[2] Because of the inadequacy of the evidence presented by the applicant to satisfy the criteria for special exceptions, as a matter of law, the Zoning Board properly denied the application.
The Church also challenges the Zoning Board's rejection of its application by way of a claim that the decision violates Florida's Religious Freedom Restoration Act, §§ 761.02-.05, Fla. Stat. (1999).[3] The *1117 Church contends that the Zoning Board's ruling restricts the free exercise of its well-founded religious beliefs which allegedly require it to educate its children in a religious setting. The Church argues that the Act requires the County to show a compelling government interest to justify the denial of the Church's requests for special exceptions and variances; or that, if such interest is shown, the County must find a less restrictive method to protect the governmental interest than complete denial of the Church's requests.
We do not agree that the County has the burden of showing it has a compelling interest requiring denial of the Church's zoning request. The United States Supreme Court, in Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 531, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993), explained that "a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." In Grosz v. City of Miami Beach, Fla., 721 F.2d 729 (11th Cir.1983), the court enunciated a three-part test to determine whether there has been a violation of the constitutional First Amendment Free Exercise Clause (which Florida's Act is obviously designed to protect): (1) the ordinance must regulate religious conduct, not belief; (2) the law must have a secular purpose and secular effect; and (3) once these threshold tests are met, the court must balance the competing governmental and religious interests.
In this case, the Church has not even attempted to show, nor could it show, that the zoning ordinances here, which preclude its requested expansion, regulate belief instead of conduct. The County's zoning code is entirely secular in purpose and effect. The record does not demonstrate that the County's zoning ordinances are aimed at impeding religion, that they are based on a disagreement with religious beliefs or practices, or that they negatively influence the pursuit of religious activity or expression of religious belief. See Grosz, 721 F.2d at 733-34. Further, the burden on the County of altering the enforcement of its zoning ordinances to accommodate the Church's requests would be much greater than any burden placed on the Church's religious activity by requiring that it comply with the Zoning Board's decision in this matter. In First Assembly of God v. Collier Co., 775 F.Supp. 383, 386 (M.D.Fla.1991), the court recognized as a significant interest the preservation of a government's ability to regulate zoning. To impose on the County's zoning ordinances an exception based on religion could result in the breakdown of a community's zoning scheme and increase nonconforming uses each time religion is asserted as a basis for zoning requests. Even though the Church argues that religious education is central to its religion, the burden on the Church of conducting this activity elsewhere is less than the burden which would be placed on the County if it is forced to routinely grant exceptions to its zoning schemes for primarily residential neighborhoods when requested to do so for allegedly religious purposes.
Application of the County's zoning ordinances to preclude expansion of First Baptist Church of Perrine's school does not prevent or seriously inhibit the Church's ability to provide a religious education. There are other less-traffic-sensitive locations within Miami-Dade County for the Church to expand in order to teach seventh and eighth grades, if its religion so requires. It is not absolutely precluded from providing seventh and eighth grade classes by the Zoning Board's decision. *1118 But, even assuming that the Church has demonstrated a substantial burden on its free exercise of religion, the County clearly has a compelling interest in enacting and enforcing fair and reasonable zoning regulations. See Daytona Rescue Mission, Inc. v. City of Daytona Beach, 885 F.Supp. 1554, 1560 (M.D.Fla.1995). For these reasons, the circuit court, appellate division also properly rejected the Church's contention that the Zoning Board's denial of its zoning request violated the Act.[4]
In conclusion, the circuit court, appellate division properly applied the correct law in this case when it denied the Church's attempts to overturn the Zoning Board's denial of its application. As a matter of law, the Church's evidence did not satisfy the zoning code criteria for the granting of special exceptions, nor did the Zoning Board's decision in any manner violate the Florida Religious Freedom Restoration Act.
Petition for writ of certiorari denied.
NOTES
[1] The Church attempts to challenge the constitutionality of section 33-311 of the Miami-Dade County Code, which section establishes the Zoning Board and creates the criteria to be used by the Zoning Board in its consideration of zoning application. We decline to address the merits of this issue because a petition for certiorari is not the proper procedural vehicle to challenge the constitutionality of this ordinance. See City of Deerfield Beach v. Vaillant, 419 So.2d 624, 626 (Fla.1982) (The district court, in reviewing the circuit court's judgment determines "whether the circuit court afforded procedural due process and applied the correct law."). The constitutionality of the ordinance must be determined in original proceedings before the circuit court, not by way of a petition for writ of certiorari. See Nostimo, Inc. v. City of Clearwater, 594 So.2d 779 (Fla. 2d DCA 1992). Furthermore, this issue was never brought before the circuit court in the proceedings below and should not be considered initially by this Court.
[2] In addition to their extensive discussion of the Church's flawed traffic study projections and their experiences with increased traffic on their residential streets from the Church school, even without the proposed increase in student population, the opponents of the application presented testimony intended to prove that the increase in older students provided for under the application would also increase crime in the area. A high school principal with extensive training on "youth crime and crime prevention" testified using county-wide crime data about the increase in neighborhood crime when comparing areas having only elementary schools to those which have middle schools. While this testimony might have some factual validity, we believe that if such a concern were sufficient to justify denying this application, zoning authorities could always deny an application by a high school or middle school even though the zoning laws and the Master Plan contemplate schools being built within residential zones. Had the Church sustained its burden, we do not believe that this testimony about a potential for crime increase would have been competent to support denial of the application.
[3] In 1998, Florida enacted the Religious Freedom Restoration Act modeled after the federal statute of the same title. See 42 U.S.C. §§ 2000bb-2000bb-4. Section 761.03, Florida Statutes provides that "the government shall not substantially burden a person's exercise of religion...." In Vernon v. City of Los Angeles, 27 F.3d 1385, 1393 (9th Cir.1994), the court explained that to show a free exercise violation, the religious adherent had the obligation to prove that a governmental action burdened the adherent's religious practice by pressuring him or her to commit an act forbidden by the religion or by preventing him or her from engaging in conduct or having a religious experience which the faith mandates. This interference must be more than an inconvenience; the burden must be substantial. See Dickerson v. Stuart, 877 F.Supp. 1556 (M.D.Fla.1995).
[4] The Church also advances an equal protection-type argument based on its assertions that the County has granted exemptions from its zoning requirements to several public schools in the area, while, at the same time, refusing to grant an individualized exemption to the Church. The Church argues that where a governmental agency has a law that provides a system of individualized exemptions, it may not refuse to extend that system to cases of religious hardship without compelling reason. See Employment Div., Dep't of Human Resources of Or. v. Smith, 494 U.S. 872, 884, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). This issue, however, was never raised at the circuit court level and we decline to address it here.