(33 App. Div. 204.)

### PEOPLE ex rel. FLOOD v. GARDINER.

(Supreme Court, Appellate Division, First Department. August 10, 1898.)

1. DISCHARGED VETERAN—"STRICTLY CONFIDENTIAL" POSITION—REMOVAL.

　The position of a subpœna server in the office of the district attorney of New York county is not "strictly confidential," within the meaning of the proviso to section 1, c. 312, Laws 1884, as amended (Laws 1896, c. 821); and therefore an honorably discharged veteran who occupies it cannot be removed except for incompetency or misconduct shown after a hearing upon notice and charges.

2. SAME.

　The term "strictly confidential position," in the veteran act (Laws 1896, c. 821, § 1), necessarily implies personal contact between the officer and his superior, involving confidence and trust, where the inferior has the power, in consequence of the relation, to impose upon the superior liabilities and obligations which the latter is bound by law to discharge.

　O'Brien, J., dissenting.

Appeal from special term, New York county.

Application by the people, on the relation of James J. Flood, against Asa Bird Gardiner, district attorney of New York county, for a writ

of peremptory mandamus. From an order denying the motion, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

James C. Cropsey, for appellant.

Charles E. Le Barbier, for respondent.

INGRAHAM, J. The relator was appointed in 1897 subpœna server in the office of the district attorney of the county of New York, and continued to act as such until January 1, 1898, when he was removed by the respondent, without charges and without a hearing. It seems that it is the custom in the district attorney's office to divide the city into certain districts, and to assign to each of the districts a particular subpœna server, appointed by the district attorney, whose duty it is to serve subpœnas upon persons residing or found in his particular district. The subpœna servers are also called upon to do errands for the district attorney and the assistant district attorneys, and to deliver packages or letters for them, but it does not appear that they have any personal relations with the district attorney. By sections 609 and 610 of the Code of Criminal Procedure, it is provided that the district attorney may issue subpœnas, subscribed by him, for witnesses within the state, in support of the prosecution of persons charged with the commission of crime, or for such other witnesses as the grand jury may direct to appear before them upon an investigation pending before them, and for witnesses in support of an indictment to appear on the trial. By section 614 it is provided that a peace officer must serve any subpœna delivered to him, or the subpœna may be served by any other person. Thus, under the Code of Criminal Procedure the duty of serving subpœnas is not imposed upon the district attorney, but is to be performed by peace officers, or by such other persons as shall be designated by the district attorney. In this city it has been found necessary to provide a special class of men to perform this duty, and we are to determine whether the position of a person appointed to perform such duty, which in other counties of the state is performed by peace officers generally, can be said to be strictly confidential in its relation to the appointing officer, the district attorney of the county of New York. This relator, being an honorably discharged soldier, and having served as such in the Union army during the war of the Rebellion, insists that it is illegal to discharge him, except for incompetency, or misconduct shown after a hearing, upon due notice, upon charges made.

By section 1, c. 821, of the Laws of 1896, which amends section 1, c. 312, of the Laws of 1884, it is provided that no person holding a position by appointment or employment in the state of New York, or in the several counties thereof, and receiving a salary or per diem pay from any of the several counties thereof, "who is an honorably discharged soldier, sailor or marine, having served as such in the Union army or navy during the war of the Rebellion and who shall not have served in the Confederate army or navy, shall be removed from such position or employment except for incompetency or misconduct shown, after a hearing upon due notice, upon the charge made, and

with the right to such employé or appointee to a review by writ of certiorari; a refusal to allow the preference provided for in this act to any honorably discharged Union soldier, sailor or marine * * * shall be deemed a misdemeanor, and such honorably discharged soldier, sailor or marine shall have * * * a remedy by mandamus for righting the wrong." This statute applies to this relator, makes his discharge illegal and a misdemeanor, and gives him a remedy by mandamus to right the wrong, unless the position comes within the following proviso: "But the provisions of this act shall not be construed to apply to the position of private secretary or deputy of an official or department or to any other person holding a strictly confidential position." This relator was not a private secretary, or a deputy of an official or department; and he is entitled to the protection of this act, unless he is a person "holding a strictly confidential position." Does a person who is a subpœna server—whose duty it is to serve subpœnas upon such persons as may be needed as witnesses in the prosecution of persons charged with the commission of crime—hold a "strictly confidential position?" As this statute was originally passed, it excluded from its provisions persons holding confidential positions, but one of the subsequent amendments inserted before the word "confidential" the word "strictly," thus intending to limit the application of the exception to the protection afforded by the statute to Union soldiers; and to subject such a discharged Union soldier, now occupying a position under the civil service of this state, to removal at the will or caprice of the appointing power, it is necessary the position held by him should be strictly a confidential position. The word "confidential" is defined by the Standard Dictionary as "having or enjoying another's confidence; having private or secret relations with another; trusted; intimate; as a confidential clerk. Given or imparted as a secret or in confidence." The word "strict" is defined in the same dictionary as follows: "Strenuously enjoined and maintained; observed, kept, or enforced with rigid exactness; as, strict order; strict silence; strict honesty; in strict confidence. * * * Accurate; not wide or loose; as a strict ruling. * * * Intimately, close as friendship." The legislature, in adding the word "strictly," must have intended to apply more rigidly the prohibition, so that the position from which a discharged Union soldier may be discharged at will must be with accuracy or exactness of a confidential character. Thus, we have the intention expressed to bring within this class of officers, who are not included within the protection awarded by this statute, only those officers who strictly bear to the appointing officer private or secret relations, or such relations as personal confidence or trust. A "strictly confidential relation" means much more than the imposition of important duties, requiring the exercise or intelligence of trained ability or integrity. It necessarily implies personal contact between the officer and his superior, where the officer occupying the position holds towards his superior a position of confidence and trust; where the person occupying the position has the power, or in consequence of the relation that exists between himself and his superior, to impose upon the superior liabilities and obligations which the superior is bound by law to discharge. It must be

shown that the officer holding the position has the power of so performing his duties, in consequence of his relations to his superior and to the business that the superior is bound to prosecute, or by a betrayal of the information acquired in consequence of the personal relations necessary because of the office which he holds, to impose liability or obligations upon the superior which the superior will be compelled to meet. This, we think, is the meaning that has been given to this term by the courts of this state when the statute has been before them for consideration. Thus, in the case of People ex rel. Crummey v. Palmer, 152 N. Y. 220, 46 N. E. 329, Judge Haight, in delivering the opinion of the court, says:

"The meaning of 'confidential' has two elements,—that of secrecy and that of trust and confidence. 'Confidential relation,' in law, as defined by the Century Dictionary, is a relation of parties in which one is bound to act for the benefit of the other, and can take no advantage to himself from his acts in relation to the interest of the other. Such a relation arises whenever a continuous trust is reposed by one person in the skill or integrity of another. The statute which we have under consideration has reference to officials, and the confidential relations mentioned undoubtedly have reference to official acts, and include, not only those that are secret, but those that involve trust and confidence which are personal to the appointing officer. If, therefore, the statute casts upon an officer a duty involving skill or integrity, and a liability either personal, or on the part of the municipality which he represents, and he intrust the discharge of this duty to another, their relations become confidential."

In the case of Chittenden v. Wurster, 152 N. Y. 368, 46 N. E. 861, Judge Haight, in delivering the opinion of the court, says:

"We have recently had occasion to consider this question to some extent in the Crummey Case, supra. That case arose under another statute, but was so closely akin to that under consideration as to give it an important bearing. We then regarded and still consider that case upon the border line, beyond which we should not go. We then were of the opinion that where the duties of the position were not merely clerical, and were such as especially devolved upon the head of the office, which, by reason of his numerous duties, he was compelled to delegate to others, the performance of which required skill, judgment, trust, and confidence, and involved the responsibility of the officer, or the municipality which he represents, the position should be treated as confidential."

And in the case of People v. Tobey, 153 N. Y. 387, 47 N. E. 800, it was held that the duties of a clerk of a police court did not come within this class of confidential relations, that the duties to be performed by such clerk were indicated in detail by the legislature, and that while the position should doubtless be filled by a man of intelligence, as the duties are such as require in their performance a fair order of ability, there is nothing secret or confidential, as between the police justice and the clerk, in the manner in which these duties are to be discharged.

Applying these principles, we do not think that the position held by the relator can be said to be one of a strictly confidential nature. It requires integrity in the performance of the duties, but the same is required of the officer who is intrusted with a warrant of a judge to execute, or the clerk of the court, who has control of the records upon which such a warrant should be issued. But certainly if the position of the clerk of a police court,

whose duty it is to take the depositions of those charging persons not yet in custody with a criminal offense, upon which a justice acts in granting a warrant for his arrest, is not confidential, it can hardly be claimed that the officer designated to serve subpœnas for the witnesses to appear before the justice to testify as to the charge occupies a confidential relation to the justice. The statute does not impose upon the district attorney the duty of serving these subpœnas. It authorizes him to issue such subpœnas, and requires any peace officer, when required, to serve them; and a failure of a subpœna server properly to perform his duties would impose no liability upon the district attorney or any of his assistants. Nor would the district attorney be responsible in any way for a failure of a subpœna server to perform his duties. The very nature of the service to be performed excludes the idea of the existence of any confidential relations between the district attorney and the person charged with the service of these subpœnas. The position is strictly subordinate, requiring merely the exercise of ordinary intelligence and integrity,—certainly not more than is required by every peace officer engaged in the execution of the criminal law. The evidence shows, without contradiction, that there are no personal relations between those subpœna servers and the district attorney and his assistants, except such as exist in all officers whose messengers and attendants are necessary for the proper performance of the duties of the office; and to class such a position as this as a confidential position would leave hardly any subordinate officer without its provisions.

We think, therefore, that the relator was illegally discharged, and that the order appealed from should be reversed, and the mandamus granted, with costs. All concur, except O'BRIEN, J., dissenting.

O'BRIEN, J. (dissenting.) In People v. Palmer, 152 N. Y. 220, 46 N. E. 329, Judge Haight, delivering the opinion of the court, says: "The meaning of 'confidential' has two elements,—that of secrecy, and that of trust and confidence." That secrecy should be observed by one to whom subpœnas are delivered for witnesses to attend before the grand jury will not be disputed, and it is equally clear that the district attorney must repose a "trust and confidence" in the person to whom subpœnas are so delivered. The position, therefore, of a subpœna server in the district attorney's office, seems to me to come within the definition of a confidential one. The present district attorney, on assuming office, selected, in place of the relator, who had been appointed but a few months before, an honorably discharged soldier; and, for the reasons given by Mr. Justice Kellog in his opinion below, I think he had such right. I dissent.