519 So.2d 629 (1987)
Jose L. MACHADO, Maria Ortega, Jose Baeza and Nubro Corporation, Dade County, Petitioners,
v.
Barbara MUSGROVE, Linda Varner, Ron Weeks, June Still and Bird-Kendall Homeowners' Association, Respondents.
No. 87-415.
District Court of Appeal of Florida, Third District.
July 14, 1987.
On Rehearing February 23, 1988.
*630 Papy, Weissenborn & Papy; Fine, Jacobson, Schwartz, Nash, Black & England and Stanley B. Price; Robert A. Ginsburg, Co. Atty., and Robert L. Krawcheck, and Eileen B. Mehta, Asst. Co. Attys., Miami, for petitioners.
John G. Fletcher, South Miami, for respondents.
Before HUBBART, DANIEL S. PEARSON and FERGUSON, JJ.
On Rehearing En Banc February 23, 1988.
PER CURIAM.
Petitioners sought to have their property rezoned from GU (interim zoning) to RU-5A (professional offices) in an area designated by the comprehensive land use plan as estate residential  up to two units per gross acre. They seek certiorari review of a circuit court decision reversing the County *631 Commission's grant of the requested change. Applying the "fairly debatable" standard the circuit court held the proposed 140,000 square foot office complex incompatible with other uses in the area and violative of the land use plan.
The 8.5 acre site of the proposed commercial use is within the area covered by a neighborhood study called the West Dade Ranch Area Study which limits the area to ranchlands, nurseries and croplands. The neighborhood study, an element of the land use plan, is the subject of an ordinance now codified at section 2-116.7, Dade County Code.
This application came before the County Commission on two occasions. In the first appearance, on November 21, 1985, both the Planning Director and the Zoning Director recommended that the application be denied. The Zoning Director expressed an opinion that the proposed RU-5A zoning would be incompatible with the Area Study and the agricultural and institutional uses on the east side of S.W. 127th Avenue.[1] He was specifically concerned that "approval of semi-professional office uses in this area could prompt similar or commercial uses on other properties in the area which could be detrimental." Administrative action was deferred.
When the matter came before the County Commission a second time on January 23, 1986, the Planning Director was still firmly of the view that office zoning on the site would set a precedent for similar requests on undeveloped sites in the area causing erosion of an already dwindling area set aside for ranches and farmland. However, the Zoning Director had changed his view, recommending approval primarily because "the property to the east across S.W. 125th Avenue has been approved for a temple and property to the northeast has been approved for a private school."
Testimony was heard from long-time area residents  farmers, ranchers, and single-family homeowners  who opposed the proposed zoning for fear that it would bring burdensome traffic and alter the character of the area. The applicant presented exhibits and legal argument. In a session closed to the public, County Commissioners thereafter approved the zoning request on a 3-2 vote.
At the outset we note that the Zoning Director's reason in support of a recommendation for approval of the commercial project  that properties to the east had been approved for a school and temple  was totally irrelevant to the land use plan consistency question. The recommendation was thus entitled to no consideration. Cf. Hall v. Korth, 244 So.2d 766 (Fla. 3d DCA 1971). Schools and churches as defined in section 33-18, Dade County Code, unlike commercial offices, are contemplated in estate residential zones so long as they satisfy the impact requirements of that section and section 33-311(d), for unusual uses. See Metropolitan Dade County v. Fuller, 497 So.2d 1322 (Fla. 3d DCA 1986), and Board of County Comm'rs v. First Free Will Baptist Church, 374 So.2d 1055 (Fla. 3d DCA 1979).

I

PLANNING AND ZONING AS SEPARATE FUNCTIONS
Application of the fairly debatable standard to both the land use and zoning questions, as is often done, tends to obscure the difference between their distinct functions. Land use planning and zoning are different exercises of sovereign power, Baker v. City of Milwaukie, 271 Or. 500, 533 P.2d 772 (1975); Haar, In Accordance With A Comprehensive Plan, 68 Harv.L. Rev. 1154 (1968); therefore, a proper analysis, for review purposes, requires that they be considered separately.
A local comprehensive land use plan is a statutorily mandated legislative plan to control and direct the use and development *632 of property within a county or municipality. § 163.3167(1), Fla. Stat. (1985); Southwest Ranches Homeowners Ass'n v. Broward County, 502 So.2d 931 (Fla. 4th DCA 1987). The plan is likened to a constitution for all future development within the governmental boundary. O'Loane v. O'Rourke, 231 Cal. App.2d 774, 782, 42 Cal. Rptr. 283, 288 (1965).
Zoning, on the other hand, is the means by which the comprehensive plan is implemented, City of Jacksonville Beach v. Grubbs, 461 So.2d 160 (Fla. 1st DCA 1984), and involves the exercise of discretionary powers within limits imposed by the plan. Baker v. Milwaukie, 533 P.2d at 775. It is said that a zoning action not in accordance with a comprehensive plan is ultra vires. Haar, In Accordance With A Comprehensive Plan, at 1156.

II

STANDARD OF REVIEW; BURDEN OF PROOF
It is well settled that a zoning action is an exercise of legislative power to which a reviewing court applies the deferential fairly debatable test. See, e.g., Southwest Ranches, 502 So.2d at 935. If the zoning action is one where reasonable people could differ as to its propriety, i.e., whether the action is arbitrary, capricious, or otherwise an abuse of discretion, the administrative decision will not be disturbed by a reviewing court. Dade Savings & Loan Ass'n v. City of North Miami, 458 So.2d 861 (Fla. 3d DCA 1984).
Part II of chapter 163, Florida Statutes, called the Local Government Comprehensive Planning and Land Development Regulation Act, and the local comprehensive plans which it mandates, are not zoning laws. The statute's requirement that all zoning action conform to an approved land use plan is, in effect, a limitation on a local government's otherwise broad zoning powers. Maryland-National Capital Park & Planning Comm'n v. Mayor & Council of Rockville, 272 Md. 550, 325 A.2d 748 (Ct.App. 1974). The purpose of the statute is to accomplish, inter alia, orderly growth, protection of resources and stability of land use throughout the state. § 163.3161(7), Fla. Stat. (1985).[2]
The test in reviewing a challenge to a zoning action on grounds that a proposed project is inconsistent with the comprehensive land use plan is whether the zoning authority's determination that a proposed development conforms to each element and the objectives of the land use plan is supported by competent and substantial evidence. The traditional and non-deferential standard of strict judicial scrutiny applies.
Strict scrutiny is not defined in the land use cases which use the phrase but its meaning can be ascertained from the common definition of the separate words. Strict implies rigid exactness, People v. Gardiner, 33 A.D. 204, 53 N.Y.S. 451 (1893), or precision, Black's Law Dictionary 1275 (5th ed. 1979). A thing scrutinized has been subjected to minute investigation. Commonwealth v. White, 271 Pa. 584, 115 A. 870 (1922). Strict scrutiny is thus the process whereby a court makes a detailed examination of a statute, rule or order of a tribunal for exact compliance with, or adherence to, a standard or norm. It is the antithesis of a deferential review.
Analogously where a zoning action is challenged as violative of the comprehensive land use plan the burden of proof is on the one seeking a change to show by competent and substantial evidence that the proposed development conforms strictly to the comprehensive plan and its elements. See Fasano v. Board of County Comm'rs, 264 Or. 574, 507 P.2d 23 (1973) (en banc). See also Comment, Burden *633 of Proof in Land Use Regulations: A Unified Approach and Application to Florida, 8 Fla.St.U.L.Rev. 499 (1980) (the proof of conformity of the zoning action to the land use plan must be discernible to a reviewing court on a verbatim record). Where the record is silent, or the evidence shows nonconformity with the plan, e.g., that a proposed project constitutes a greater intensity of use, Baker v. Milwaukie; Maryland-National Capital Park & Planning Comm'n v. Mayor & Council of Rockville, a lesser intensity of use, City of Cape Canaveral v. Mosher, 467 So.2d 468 (Fla. 5th DCA 1985), a different and incompatible character of use, Alachua County v. Eagle's Nest Farms, Inc., 473 So.2d 257 (Fla. 1st DCA 1985), or a failure to comply with the plan's mandatory procedures, Hillsborough County v. Putney, 495 So.2d 224 (Fla. 2d DCA 1986), the requested rezoning will be denied as inconsistent with the comprehensive plan.
In Sengra Corp. v. Metropolitan Dade County, 476 So.2d 298 (Fla. 3d DCA 1985), we held that a grant of zoning for a use not consistent with the comprehensive land use plan was invalid, implicitly rejecting the notion that the statutes permitted a reviewing court to further consider the extent and degree of a clear inconsistency[3]. Two recent cases, Alachua County v. Eagle's Nest Farms, Inc. and Hillsborough County v. Putney, appear to follow a strict adherence view although, as in Sengra, there was no in-depth examination of the meaning of consistency.

III

CONSISTENCY WITH LAND USE PLAN
The tests for consistency of a development project with a land use plan have been, until recently, conflicting or imprecise primarily because the word consistency lacked definition[4]. In 1985 the legislature added a definition of consistency at section 163.3194(3)(a), Florida Statutes (1985):
A development order or land development regulation shall be consistent with the comprehensive plan if the land uses, densities or intensities, and other aspects of development permitted by such order or regulation are compatible with and further the objectives, policies, land uses, and densities or intensities in the comprehensive plan and if it meets all other criteria enumerated by the local government.
The legislation implies, as one writer has noted in a thoughtful examination of the subject, that application of a fairly debatable, or for that matter any other deferential or discretionary standard, is not the correct standard of review of an administrative determination that a development order is consistent with the local comprehensive plan. McPherson, Cumulative Zoning and the Developing Law of Consistency with Local Comprehensive Plans, 61 Fla.B.J. 71 (1987).
Writing a concurring opinion in City of Cape Canaveral v. Mosher, 467 So.2d 468 (Fla. 5th DCA 1985), Judge Cowart gave the term consistency a working definition which squares with the statute:
The word "consistent" implies the idea or existence of some type or form of model, standard, guideline, point, mark or measure as a norm and a comparison of items or actions against that norm. Consistency is the fundamental relation between the norm and the compared item. If the compared item is in accordance with, or in agreement with, or within the parameters specified, or exemplified, by *634 the norm, it is "consistent" with it but if the compared item deviates or departs in any direction or degree from the parameters of the norm, the compared item or action is not "consistent" with the norm.
Mosher, 467 So.2d at 471.
Further, in reasoning which we adopt, he wrote:
A comprehensive land use plan legislatively sets a zoning norm for each zone. Under Section 163.3194(1), Fla. Stat., after adoption of such a plan, zoning changes should be made only when existing zoning is inconsistent with the plan; otherwise, the plan should be legislatively amended as to the area of the entire zone or as to the uses permitted within the entire zone. This is ... the only way to (1) regulate and maintain land use by zones; (2) make individual zoning changes, which are essentially executive action, conform to a legislated plan; and (3) avoid arbitrary "spot zoning" change that permits the use of individual parcels to depart from a plan.
Mosher, 467 So.2d at 471.
Dade County is critical of Mosher and its requirement for strict adherence to the land use plan,[5] contending that it would deprive local government of the flexibility needed to respond to rapidly changing conditions in Dade County. In response the opponents, neighboring landowners, contend that conditions change in rapid and uncontrolled fashion in Dade County, increasing the need for costly public services and facilities, due to loose enforcement of the land use planning scheme. We briefly examine the three elements of the Land Use Plan in light of the arguments.
The Land Use Plan consists of a colorcoded map which separates uses of all county lands into roughly thirteen categories including residential (six densities), industrial and office, agricultural, and parks and recreation. Textual material on the reverse side of the map constitutes the second element of the plan. Neighborhood and functional studies and plans, as adopted pursuant to ordinance, make up the third element of the comprehensive plan.
The pertinent textual material provides:
The residential designations [on the map] only indicate the overall maximum residential density for an area. Non-residential uses that are permitted in these areas are not shown. Decisions by the County relative to when, where and how these areas are to be developed with respect to non-residential uses will be guided through the use of the policies and written guidelines of the Comprehensive Development Master Plan. The application of these policies and guidelines for planning ... of ... nonresidential permitted use is most appropriate and beneficial at the neighborhood level.

(Emphasis added.) See note 2 for additional land use map detail now required by statute.
Dade County argues that the plan's textual language states a general policy which it is not bound to follow. We agree with respondents that if that is the case then there are no standards or parameters to guide when, where, what kind and how much commercial use will be permitted in a planned residential zone, leaving the zoning authority free to approve, ad hoc, commercial zoning in a residential zone subject only to a deferential court review. We have previously rejected that philosophy:
[T]he law of Florida is committed to the doctrine of the requirement that zoning ordinances ... must be predicated upon legislative standards which can be applied to all cases, rather than to the theory of granting an administrative board or even a legislative body the power to arbitrarily decide each case entirely within the discretion of the members of the administrative board or legislative body.
City of Homestead v. Schild, 227 So.2d 540, 543 (Fla. 3d DCA 1969).
*635 A Comprehensive Land Use Plan is not a "vest-pocket tool," Baker v. City of Milwaukie, for making individual zoning changes based on political vagary, see Haar & Kayden, Zoning Laws Reflect Our Values and Priorities, N.Y. Times, Nov. 24, 1986, at 17, col. 1, noted in Southwest Ranches. Instead, it is a broad statement of a legislative objective "to protect human, environmental, social, and economic resources; and to maintain, through orderly growth and development, the character and stability of present and future land use and development in this state." § 163.3161(7), Fla. Stat. (1985) (emphasis added). See 1979 Att'y Gen.Op.Fla. 079-88 (Sept. 28, 1979).
Further, a neighborhood study, when adopted by ordinance, becomes a law and an integral element of the land use plan. To accept Dade County's argument, that it is not bound by the neighborhood study element of the plan, would render useless the costly and time-consuming processes of formulating a comprehensive plan, and adopting neighborhood area studies. Uselessness will not be attributed to legislative acts. Allied Fidelity Ins. Co. v. State, 415 So.2d 109 (Fla. 3d DCA 1982). Finally, and significantly, the neighborhood study once adopted by ordinance is no longer an expression of general policy. The study becomes a permanent law of local government which continues in force until repealed. § 166.041(1)(a), Fla. Stat. (1985). We know of no rule and petitioners have offered none, which allows government, acting in its executive capacity, to disregard its own laws.
Section 163.3194(4)(a), Florida Statutes (1985),[6] relied upon by the petitioners in support of the argument that the plan is a flexible instrument, does not compel a different result. We read the provision, in context, as a recognition of the court's inherent power to take into account fundamental fairness questions as may arise from a strict application of the plan  not as a license to second-guess the legislative body where there is simply the to-be-expected collision of the plan with private interests. The record reflects no contention or showing below that the plan is totally unreasonable as applied to the development involved in the litigation, or that the plan is incomplete or internally inconsistent, or that the plan, in its application, would constitute a taking of private property without due process or fair compensation. Even where there is some basis for consideration by the court pursuant to section 163.3194, its actions must be consistent with the overall purpose and intent of the Act as expressed in section 163.3161.

CONCLUSION
Whether a proposed development project is consistent with a local comprehensive land use plan and all of its elements is tested on review by a standard of strict scrutiny; the burden is on the applicant for rezoning to show by competent and substantial evidence that the requested rezoning conforms to the legislative plan.
A neighborhood area study is a critical element of Dade County's land use plan; without it there are no legislative standards to guide where, when, what kind and the amount of nonresidential uses will be allowed in a residential zone. The requested rezoning for a non-residential use is on a site within a residential zone which is the subject of a neighborhood area study. That study, now codified at section 2-116.7, Dade County Code, as the West Dade Ranch Study Area, limits non-residential development in the zone to ranchlands, nurseries and croplands.
Because the applicants were unable to show that their proposed commercial *636 project was consistent with each element of the land use plan and furthered its objectives, the circuit court was eminently correct in voiding the rezoning.
In light of our determination on the land use plan issue we need not reach the separate zoning question.
Certiorari denied.
Before SCHWARTZ, C.J., and BARKDULL, HENDRY, HUBBART, NESBITT, BASKIN, DANIEL S. PEARSON, and FERGUSON, JJ.[*]

On Rehearing En Banc
Upon consideration of this cause en banc, the court unanimously adopts the panel opinion herein filed July 14, 1987, as its own. Accordingly, the petition for writ of certiorari is denied.
NOTES
[*] JORGENSON, J., did not participate.
[1] The site is at the southwest corner of S.W. 127th Avenue and Sunset Drive in Dade County. Surrounding property includes two churches to the north, a plant nursery to the south, and single family homes RU-1 to the west. Lands immediately west are unimproved. Dade County and the applicant describe the plant nursery as a commercial use. Both the Planning Director and Zoning Director treat it as consistent with an agricultural use.
[2] That the land use plan does restrict local zoning power becomes increasingly clear with each legislative session. Section 163.3177(6), Florida Statutes (1985), requires that the future land use map designate the exact location and extent of all proposed commercial uses. Sections 163.3167, 163.3177, and 163.3184, Florida Statutes (Supp. 1986), mandate that local comprehensive plans coordinate with regional and state plans, subject to review for compliance with state and regional land use plans. See deHaven-Smith & Paterson, The 1986 Glitch Bill-Missing Links In Growth Management, Fla.Envtl. & Urban Issues, October 1986, at 4.
[3] On this point we differ with the unique view adopted by the court in Southwest Ranches that it may weigh competing public and private interests for determining consistency even where a proposed development fails to conform to one or more critical elements of the land use plan. The court rejected Judge Cowart's strict adherence view articulated in Mosher which we think more closely follows the statute.
[4] Compare City of Cape Canaveral v. Mosher (change of zoning from medium density residential district to single family homes not consistent with plan, therefore invalid) with City of Jacksonville v. Grubbs (use of land more limited than the future use contemplated by the comprehensive plan is not inconsistent with the plan). Both cases agree, however, that a use more intense than proposed by the comprehensive plan is subject to strict scrutiny.
[5] McPherson urges adoption of Judge Cowart's views as expressed in Mosher that all development orders challenged as being inconsistent with the local comprehensive plan should be judicially scrutinized.
[6] Section 163.3194(4)(a) provides:

A court, in reviewing local governmental action ... under this act, may consider, among other things, the reasonableness of the comprehensive plan, or element or elements thereof, relating to the issue justiciably raised or the appropriateness and completeness of the comprehensive plan, or element or elements thereof, in relation to the governmental action ... under consideration. The court may consider the relationship of the comprehensive plan, or element or elements thereof, to the governmental action taken ... but private property shall not be taken without due process of law and the payment of just compensation.