774 So.2d 14 (2000)
Thomas BAKER, Aino Baron, Charles Baron and Hammocks Properties, Inc., Petitioners,
v.
METROPOLITAN DADE COUNTY, a/k/a Miami-Dade County, a political subdivision of the State Of Florida, Smithsonian Investments, Inc., and BMS Management Company, Respondents.
No. 3D00-1118.
District Court of Appeal of Florida, Third District.
August 2, 2000.
Rehearing Denied January 3, 2001.
*16 Charles M. Baron, North Miami Beach, for petitioners.
Bercow & Radell and Jeffrey Bercow, Miami, and Deborah L. Martohue, Miami; Geller, Geller, Beskin, Shienvold, Fisher & Garfinkel and Peggy Fisher (Hollywood); Robert A. Ginsburg, County Attorney and Craig H. Coller, Assistant County Attorney, for respondents.
Before GERSTEN, FLETCHER, and SORONDO, JJ.
FLETCHER, Judge.
Thomas Baker, Aino Baron, Charles Baron, and Hammocks Properties, Inc. [objectors] have petitioned for a writ of certiorari, seeking the quashal of a decision of the appellate division of the circuit court, upholding resolution no. CZAB2-3-99 of the Miami-Dade County Community Zoning Appeals Board 2. The county board's resolution granted an application by the respondent property owners for a special exception, an unusual use, and several non-use variances on the subject property. We grant the petition and quash the circuit court's decision.
Our review is limited to determining whether the circuit court afforded due process and correctly applied the correct law.[1]Jesus Fellowship, Inc. v. Miami-Dade County, 752 So.2d 708 (Fla. 3d DCA 2000); Maturo v. City of Coral Gables, 619 So.2d 455 (Fla. 3d DCA 1993); Herrera v. City of Miami, 600 So.2d 561 (Fla. 3d DCA), review denied, 613 So.2d 2 (Fla. 1992). From our review we conclude that the circuit court failed to apply the correct law as to several issues.
The property subject to the application consists of four adjacent lots forming a rectangle. Lot one (approximately seven-tenths of an acre) is zoned for a number of commercial uses,[2] but does not automatically allow the desired use (a self-storage facility), for which use a special exception is required. Lots two and three, zoned for residential use,[3] together total approximately one and one-half acres. Lot four is zoned for residential use also, but is a part of the Oleta River and the river's mangrove fringe. The existence of the river and its mangroves precedes by far (in geologic terms) the platting and zoning of lot four, which lot all parties agree is protected from development. As to the county's comprehensive development master plan, it designates lot one as business and office, and lots two, three, and four as low-medium density residential.
In its efforts to develop a self-storage facility on lot one (the only commercially plan-designated and zoned lot) the property owners applied to the county for a special exception therefor. In order to increase the size of the requested facility beyond that which could be built on lot one alone, a site plan was submitted which includes the use of residentially plan-designated and zoned lots two and three in conjunction with commercial lot one. Specifically, the site plan calls for lots two and three to be used for the required parking and landscaped open space, for a self-storage *17 facility of the size proposed on lot one.[4]
In order to accomplish this over-size commercial enterprise it was necessary for the property owner to receive the county board's approval, at a public hearing, of numerous requests:
(1) a special exception to permit a self-storage facility;
(2) six variances:[5] to lot coverage, floor area ratio, parking, setback, lot boundary wall, and subdivison street requirements;
(3) an unusual use to permit the parking to be located in a zone [RU-3M, residential] more restrictive than the use [BU-2, commercial] it serves.[6]
The county board, against the objectors' protests, approved the requests. Our reasoning follows, whereby we have concluded that the circuit court failed to apply the correct law.
As we observed in Jesus Fellowship, Inc. v. Miami-Dade County, 752 So.2d at 709:
"An applicant seeking special exceptions and unusual uses needs only demonstrate to the decision-making body that its proposal is consistent with the county's land use plan; that the uses are specifically authorized as special exceptions and unusual uses in the zoning district; and that the requests meet with the applicable zoning code standards of review. If this is accomplished, then the application must be granted unless the opposition carries its burden, which is to demonstrate that the applicant's requests do not meet the standards and are in fact adverse to the public interest."
See also First Baptist Church of Perrine v. Miami-Dade County, 768 So.2d 1114 (Fla. 3d DCA 2000). Thus, when an applicant seeks approval of a special exception or an unusual use, the applicant's first concern is its proposal's consistency with the local government's land use plan.[7]
It is plan consistency that we will first address. The property owners, however, argue that the objectors are precluded from raising the plan's inconsistency by certiorari review. Ordinarily, it is true, if an aggrieved or adversely affected party undertakes to challenge a development order as being inconsistent with the land use plan, the sole method available is that provided by section 163.3215, Florida Statutes (1999). This section provides that an action for injunctive or other relief challenging the plan consistency of a development order cannot be brought until the complaining party has filed a verified complaint with the local government, thus providing an opportunity to eliminate without litigation any plan inconsistency. If the local government fails to correct an inconsistency, then the aggrieved party is free to file its court action. The time limits of *18 section 163.3125, as a practical matter and as a legal matter, preclude judicial challenges by certiorari review. See Poulos v. Martin County, 700 So.2d 163 (Fla. 4th DCA 1997). The correct action for such challenges is ordinarily one for declaratory and injunctive relief, with a trial de novo. Poulos, at 165-66.
However, here we have the square peg that won't fit in the round hole. In making its recommendation the county staff concluded that the applied-for development order would allow a use inconsistent with the county's comprehensive plan; i.e., the parking for the commercial self-storage facility would be located on property designated by the county's plan for residential use. The staff recommended approval nonetheless and the county board in its development order (resolution no. CZAB2-3-99) followed the staffs recommendation. The order thus permits a commercial use (the facility's parking) on residentially planned property in violation of section 163.3194(1)(a), Florida Statutes (1999). There simply is no necessity for the objectors to challenge the order as being plan inconsistent. The county knows it is and has so pronounced. It would serve no purpose to require a verified complaint to be filed with the county seeking its ruling on consistency. We will not require such a useless act.[8]
As we have stated, the county staff recommended approval of the application, and the county board approved it, notwithstanding the plan inconsistency. The county staffs recommendation states:
"Although only the BU-2 zoned portion of the site (Lot 1) is [plan] designated for Business and Office use, which is consistent with the Master Plan, the remaining portion of the site is designated for Low-Medium residential density and the proposed parking within such designation to serve the commercial use will be inconsistent with the same.[9] Notwithstanding, staff believes that it would be fundamentally unfair to deny this application due to the fact that a portion of the RU [residential] zoned portion of the site is a part of the environmentally sensitive Oleta River and mangroves."[10] [e.s.]
Based on their interpretation of the doctrine of "fundamental fairness," the county and the property owners contend that the county board has the authority (1) to reject the land use plan designations, and (2) to determine what land use plan designations should instead be applied. We find to the contrary.
Our analysis of this "fundamental fairness" argument begins with Machado v. Musgrove, 519 So.2d 629 (Fla. 3d DCA 1987), wherein this court dealt with the supremacy of land use planning over zoning. In Machado, Dade County and the property owners therein unsuccessfully argued that section 163.3194(4)(a) of the Act required land use plans to be flexibly applied, rather thanas this court concluded strictly applied. Section 163.3194(4)(a) may be found in Machado, at footnote 6. It read then as it does here (1999 version):

*19 "A court, in reviewing local governmental action or development regulations under this act, may consider, among other things, the reasonableness of the comprehensive plan, or element or elements thereof, relating to the issue justiciably raised or the appropriateness and completeness of the comprehensive plan, or element or elements thereof, in relation to the governmental action or development regulation under consideration. The court may consider the relationship of the comprehensive plan, or element or elements thereof, to the governmental action taken or the development regulation involved in litigation, but private property shall not be taken without due process of law and the payment of just compensation." [e.s.]
As to section 163.3194(4)(a), this court stated, at 635:
"We read the provision, in context, as a recognition of the court's inherent power to take into account fundamental fairness questions as may arise from a strict application of the plannot as a license to second-guess the legislative body where there is simply the to-be-expected collision of the plan with private interests." [e.s.]
"Fundamental fairness" questions are judicial ones, within the jurisdiction of the courts, and are so recognized by the legislature.
The county and the property owners contend that the county has by ordinance empowered its quasi-judicial zoning boards with this inherent power of the courts. Thus, they contend, county boards can invalidate plan designations and replace the eradicated designations with whatever designations the county boards see fit to apply. For this proposition they call upon section 2-114(c)(2), Miami-Dade County Code, part of the Legislative Intent section of the county's land use plan. Section 2-114(c)(2) reads:
"The Comprehensive Development Master Plan shall not be construed to preempt considerations of fundamental fairness that may arise from a strict application of the Plan. Accordingly, the Plan shall not be deemed to require any particular action: (a) where the plan is incomplete or internally inconsistent, (b) that would constitute a taking of private property without due process or fair compensation; or (c) which would deny equal protection of the laws."
The county and the property owners contend that the county board legally applied this section when it determined that it would be fundamentally unfair for lot four to remain part of the Oleta River, determined not to apply the existing residential designations on lots two and three, and instead elected to apply a commercial designation thereon.[11]
Our reading of code section 2-114(c)(2) leads us to conclude that it is not an empowerment of any board, but a reflection of the county's desire that in a court review of development orders, Machado's insight into fundamental fairness not be lost in the shuffle. Indeed, if we viewed this statement of intent as an empowerment of administrative boards, we would be compelled to declare it unconstitutional as not providing sufficient standards upon which the boards could act;[12] *20 as attempting to grant judicial powers[13] to administrative boards; and as violating the separation of powers.[14]
We also would be required (if the county's and the property owner's position were correct) to declare that the county ordinance, section 2-114(c)(2) of the code, must fall because of its conflict with state law.[15] Their argument has the county board electing which plan designation to apply. Pursuant to the Act, however, that choice is made by the local government's governing body, and only after the procedures required by the Act. See, e.g., § 163.3184, Fla. Stat. (1999).
In summary as to plan inconsistency, the county board was required to deny the application. The circuit court failed to apply the correct law when it concluded that the county's quasi-judicial board had the authority to reject the plan designation on the subject property and to determine which designation to apply thereto.
As we previously stated, an applicant for a special exception or unusual use must also demonstrate that the applied-for use is specifically authorized in the zoning district in which it is to be located. Jesus Fellowship, Inc., 752 So.2d 708. The unusual use here applied for was one to permit commercial parking to be located in a residential zone. As we have previously noted, see footnote 6, the county code contains no such unusual use authorization. Section 33-13, Miami-Dade County Code, lists the unusual uses which may be permitted. It authorizes:
"Parking (noncommercial parking in zones more restrictive than in which the use it serves is located) ...." [e.s.]
As the application was for an unusual use to permit commercial parking in a more restrictive zone, the requested unusual use was not an authorized one and the county board had the duty to deny the unusual use.
However, the county and the property owners take the position that the parking proposed to be located on lot two is noncommercial parking even though it will serve the commercial use (the self-storage facility). This position is at odds with the county staff's recommendation, which the county board followed, recognizing that the parking on lot two serves the commercial use on lot one and therefore is inconsistent with the residential designation on lot two.
Clearly, the self-storage (commercial) use cannot survive if it has no parking for people who wish to use it. The parking is as critical to the self-storage operation as the five-story, self-storage structure itself. In Homer v. Dadeland Shopping Center, 229 So.2d 834 (Fla.1970), the Florida Supreme Court, in dealing with the ad valorem taxation of a shopping center's parking area, noted at 837:
"So it is that the land used for the parking area is an integral part of the shopping center and just as important to its development as the land upon which *21 the buildings are to be erected. The tax assessor was justified in placing the same value on the land used for the parking area as the land upon which the improvements were erected." [e.s.]
Parking lots which serve commercial uses are themselves commercial. This is true whether the customer pays for the parking (at the parking lot or elsewhere) or whether the parking cost is absorbed by the owner or tenants of the commercial structure and the customer lays out no cash for parking on the lot. The requested unusual use is not authorized in the residential district and must be denied.
For the foregoing reasons we conclude that the county board was required to deny the property owners' application, and the circuit court failed to apply the correct law in not quashing the board's decision. The petition for writ of certiorari is granted and the decision of the circuit court is quashed.
NOTES
[1] This second element of review is also expressed as whether the essential requirements of the law have been observed. See Florida Power & Light Co. v. City of Dania, 761 So.2d 1089 (Fla.2000).
[2] The county's BU-2 zoning category.
[3] The county's RU-3M zoning category.
[4] Lot four, of course, will remain as part of the Oleta River.
[5] Designated as non-use variances, thus distinguishing them from use variances. Nonuse variances, unlike use variances, do not require a showing of a legal hardship according to the county code. See § 33-311(A)(4)(a) and (b), Miami-Dade County Code. The constitutionality of granting non-use variances without a showing of legal hardship has not been raised.
[6] This language was used in the county staff's (department of planning and zoning) recommendation to the county board, as well as in that board's decision (resolution no. CZAB2-3-99). It is, however, inaccurate. Section 33-13, Miami-Dade County Code, which in subsection (e) identifies the allowable types of unusual uses, lists "... parking (non-commercial parking in zones more restrictive than in which the use it serves is located) .... "[e.s.] This will be discussed infra.
[7] Of course, all actions taken in regard to development orders, not just special exceptions and unusual uses, "shall be consistent with such plan ...." § 163.3194(1)(a), Fla. Stat. (1999). It is in all cases the applicant's task to demonstrate such plan consistency. Village of Key Biscayne v. Tesaurus Holdings, Inc., 761 So.2d 397 (Fla. 3d DCA 2000); Machado v. Musgrove, 519 So.2d 629 (Fla. 3d DCA 1987), review denied, 529 So.2d 694 (Fla. 1988).
[8] Similarly, in Village of Key Biscayne v. Tesaurus Holdings, Inc., supra, we did not require the Village to file an action against itself pursuant to section 163.3125 in order for it to determine that its decision denying a zoning action as plan inconsistent was correct.
[9] The parking on lot two, residentially planned property, is not the only plan inconsistency. The use of lot three to provide more open space for the self-storage structure on lot one, is also forbidden commercial use on residentially planned property.
[10] It is a non-sequitur to suggest that because a portion of a planned residential lot cannot be developed, then two adjacent, planned residential lots will be permitted to be used for commercial purposes in order to maximize a commercial use on a fourth lot. It might be acceptable sequential logic for the number of residential units that the zoning would have allowed on the undevelopable lot to be transferred to the adjacent residential lots. That, however, is not before us.
[11] Neither the county staff's recommendation nor the county board's resolution states why they consider it to be fundamentally unfair to let the river be the river just as it was when the property owners purchased it. Neither do they state which category of unfairness is implicated, i.e., whether (a), (b) or (c) of section 2-114(c)(2). However, their reference to the inability to use lot four as it is part of a (natural) river smacks of a "taking" without due process or fair compensation argument. However, Graham v. Estuary Properties, 399 So.2d 1374 (Fla.), cert. denied, 454 U.S. 1083, 102 S.Ct. 640, 70 L.Ed.2d 618 (1981), negates any such taking argument. See Graham, 399 So.2d at 1382.
[12] As this court stated in Machado, at 634:

"Dade County argues that the plan's textual language states a general policy which it is not bound to follow. We agree with the respondents that if that is the case then there are no standards or parameters to guide when, where, what kind and how much commercial use will be permitted in a planned residential zone, leaving the zoning authority free to approve, ad hoc, commercial zoning in a residential zone subject only to a deferential court review. We have previously rejected that philosophy...."
[13] That is, the power to determine the illegality or unconstitutionality of legislation (the existing designations). See Palm Harbor Special Fire Control Dist. v. Kelly, 516 So.2d 249 (Fla.1987)(An administrative agency has no power to declare a statute void or otherwise unenforceable.); Dade County v. Overstreet, 59 So.2d 862 (Fla.1952); Machado, supra.
[14] Separation of powers is violated by authorizing quasi-judicial boards to direct which planning designation will apply to property, which is a legislative function. See City of Miami Beach v. Weiss, 217 So.2d 836 (Fla. 1969); Metropolitan Dade County v. McGeary, 291 So.2d 28 (Fla. 3d DCA 1974). Although these (and other such cases) involved legislative zoning districts and the instant case involves legislative planning designations, the principle remains the same.
[15] State general law prevails over local ordinances. E.g., Dade County v. Mercury Radio Service, Inc., 134 So.2d 791 (Fla.1961).