GERSTEN, J.
specially concurring with Judge WELLS’s dissent from the denial of Rehearing En Banc.
I concur with Judge Wells’s dissent, would grant rehearing en banc, withdraw the panel opinion, and affirm the Department of Community Affairs’ (“Department”) order. I write separately to explain my reasoning for respectfully disagreeing with the majority’s analysis in this case. First, I will discuss why a proper analysis requires separating land use planning from zoning matters. Then, I will review the findings of fact and legal conclusions which support the City’s land use planning decision in this case.
Factual Background
Balbino Investments, LLC (“Balbino”) requested a small scale amendment to the Future Land Use Map (“FLUM Amendment”) of the Miami Comprehensive Neighborhood Plan (“Comprehensive Plan”). The City of Miami (“City”) approved the FLUM Amendment, changing the land use designation of Balbino’s property on the Miami River from Industrial to Restricted Commercial.[4]
Herbert Payne, Ann Stetser, The Durham Park Neighborhood Association, Inc., and the Miami River Marine Group, Inc. (collectively “petitioners”) petitioned the Division of Administrative Hearing (“DOAH”), challenging the ordinance that approved the FLUM Amendment. After an evidentiary hearing, the ALJ issued a recommended order. The order concluded that it was fairly debatable that: (1) the amendment was internally consistent with other provisions of the plan; and (2) the plan amendment analysis was supported by professionally acceptable data. Subsequently, the Department adopted the ALJ’s order.
The petitioners appealed the ALJ’s order, and this Court reversed. Balbino moved for rehearing and rehearing en banc. This Court denied the rehearing, but substituted a revised opinion, and denied the rehearing en banc outright.
On motions for rehearing, the petitioners contend that: (1) the ALJ erred in striking certain provisions of the Comprehensive Plan; (2) the FLUM Amendment is inconsistent with the Comprehensive Plan; and (3) the City did not perform the necessary concurrency analysis. Balbino asserts that: (1) the ALJ did not err because the stricken provisions are irrele *737 vant, relating to zoning only; (2) the FLUM Amendment is consistent with the Comprehensive Plan; and (3) the City relied on professionally accepted sources on concurrency. I agree with Balbino and would affirm the ALJ’s order.
Standard of Review
Our review of this case is limited by section 120.68, Florida Statutes (2004). The court shall remand a case to the agency for further proceedings consistent with the court’s decision or set aside agency action, as appropriate, when it finds that, among other things: “the agency’s action depends on any finding of fact that is not supported by competent, substantial evidence in the record of a hearing conducted pursuant to sections 120.569 and 120.57; however, the court shall not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact.” See § 120.68(7)(b), Fla. Stat. (2004).
Here, there was competent, substantial evidence to support the ALJ’s findings. The majority’s overbroad analysis improperly re-weighs the evidence on the Comprehensive Plan and concurrency in direct violation of section 120.68(7)(b).
Land Use Planning versus Zoning
A comprehensive plan is a statutorily mandated legislative plan to control and direct the use and development of property within a county or municipality. See § 163.3167(1), Fla. Stat. (2004). A comprehensive plan acts as a constitution for all future development within the governmental boundary. Machado v. Musgrove, 519 So.2d 629, 632 (Fla. 3d DCA 1987). Zoning, on the other hand, is the means by which a comprehensive plan is implemented. 519 So.2d at 632. “The present use of land may, by zoning ordinance, continue to be more limited than the future use contemplated by the comprehensive plan.” Bd. of County Comm’rs of Brevard County v. Snyder, 627 So.2d 469 (Fla.1993).
Land use planning and zoning are different exercises of sovereign power, and a proper analysis requires that courts consider them separately. Machado, 519 So.2d at 631. Moreover, a joint analysis is unnecessary when the new land use designation is not wholly inconsistent with the current zoning. Snyder, 627 So.2d at 469.
Here, the record shows that zoning follows planning in the City’s practices. The assistant director to the Miami Planning Department (“the AD”) testified that the City Commission “vote[s] separately on the Comp Plan Amendment, the zoning change, and the major use special permit. They don’t take one vote. They have to consider them separately because they have separate criteria.” She also testified that in the City’s procedure for considering planning and zoning changes, the City Commission is “scheduled [to vote on] the land use amendment ... first, because you can’t change the zoning if the Comp Plan has not been changed.”
Additionally, both the present zoning, “SD 4.2 Waterfront,” and requested land use, “Commercial Industrial,” include commercial marinas and living quarters on vessels. Thus, because the proposed land use designation is not wholly inconsistent with the present zoning, there is no need to consider zoning matters in deciding on the FLUM amendment. The Commission, therefore, was free to approve the FLUM Amendment without approving any subsequent zoning change. Accordingly, the ALJ properly excluded consideration of any provisions that dealt solely with zoning as irrelevant.
Land Use Planning Analysis
Accordingly, I review the ALJ’s conclusions as to those provisions in the Comprehensive Plan which apply to land use, and not to those that apply to zoning. I also *738 focus solely on the evidence relating to the land use goals, objectives, and policies:

Land Use Goal LU-1

This goal requires that the city “[m]aintain a land use pattern that (1) protects and enhances the quality of life in the city’s residential neighborhoods; (2) fosters redevelopment and revitalization of blighted or declining areas; (3) promotes and facilitates economic development and growth of job opportunities in the city; ... (5) promotes the efficient use of land and minimizes land use conflicts; and (6) protects and conserves the city’s significant natural and coastal resources.”
I will discuss separately the ALJ’s finding as to each of these land use pattern goals.

A.Residential Neighborhood Quality of Life

The ALJ found that the property was surrounded by residential neighborhoods and eliminated the potential for industrial development that may generate noise, smoke, fumes, illumination, traffic, hazardous wastes, or negative visual impact. It also found that the property would enhance the quality of life for the residents of Allapattah. There was witness testimony from the ALJ and City Commission hearings to support a finding that the property is surrounded by residential neighborhoods. The industrial classification in the Comprehensive Plan specifies that industrial land may be used for the aforementioned nuisances. The majority substitutes this finding with the assertion from a non-expert witness that the proposed project (not the land use change) may create traffic. This assertion is improper.

B.Revitalization of Blighted Areas

The ALJ found that the property is located in Allapattah, which, according to expert testimony, “has been a neighborhood development zone, a community development target area, [which means] it’s generally one of the poorer neighborhoods in the city.” The majority substitutes this finding with its finding that while some of the neighborhoods in Allapattah are declining, “studies show that [other neighborhoods in Allapattah] are ‘thriving.’ ” Thus, the majority improperly re-weighed another piece of evidence.

C.Economic Development and Job Growth

The ALJ found that there was no persuasive evidence to support that the change in land use would negatively impact economic development and job growth. Perhaps this was because the property could continue operating as a commercial marina after the land use change became effective.
The majority argues that protecting the potential for marine industry jobs is more important than providing housing close to an established major employment center. This argument is contingent upon rezoning and approval of the proposed project, which as mentioned above, is not relevant here.

D.Efficient Land Use

The ALJ found that there is no evidence that the FLUM Amendment is inconsistent with the concept of promotion of efficient use of land. The AD testified:
[t]he restricted commercial classification is more appropriate for this particular piece of property than the industrial classification for which it was comp planned because of its proximity to the residential neighborhoods.
This is not a segment — it’s not a piece of property that was currently being used for heavy industrial use. It wasn’t being used for shipping or anything that was loud or smoke or fumes. It’s got [single family residential property] right *739 across the way from it. It’s got two other residential properties next to it. The residential areas around it would be more detrimentally impacted by a heavy industrial use than by a restricted commercial use.
The majority does not contest this finding.

E. Conservation of Natural and Coastal Resources

The ALJ found that there was no evidence that the FLUM Amendment is inconsistent with subpart (6). The finding is bolstered by witness testimony that “the land use change in and of itself is not inconsistent with [subpart (6) ]. It’s how the property is developed and how they actually build on it where the City will have to enforce if it’s not [consistent].” Thus, the majority mistakenly reads subsection (6) as protecting and conserving natural and coastal resources so that only marine industry may use them.

Land Use Objective LU 1.2

This objective requires that the City “[p]romote the redevelopment and revitalization of blighted, declining or threatened residential, commercial, and industrial areas.”
The ALJ stated that because Allapattah is a declining residential neighborhood, the FLUM Amendment will promote redevelopment. This finding is somewhat misleading, but not wholly incorrect. The FLUM Amendment does not affect this objective. It does not promote any specific redevelopment or revitalization, but it does not discourage redevelopment or revitalization either. It simply allows for a different form of redevelopment. Therefore, this finding was proper.

Land Use Objective LU 1.3

This objective requires that:
The city will continue to encourage commercial, office and industrial development within existing commercial office and industrial areas, increase the utilization and enhance the physical character and appearance of existing buildings; and concentrate new commercial and industrial activity in areas where the capacity of existing public facilities can meet or exceed the minimum standards for Level of Service adopted in the Capital Improvement Element.
The ALJ found that the FLUM Amendment is consistent with this objective because the new land use designation, by definition, allows commercial office use. The ALJ also found that the concurrency analysis the City performed shows approval of the FLUM Amendment alone will not result in a failure of existing public facilities to meet or exceed applicable level of service standards. Thus, these findings are supported by the Comprehensive Plan itself and the City’s concurrency analysis.

Coastal Management Objectives and Policy

Coastal Management Element Objective 3.1 requires that the City “[a]llow no net loss of acreage devoted to water dependent uses in the coastal area of the City of Miami.” Coastal Management Policy 3.1.1 states that, “Future land use and development regulations will encourage water dependent uses along the shore line.”
It is a definitional impossibility that a land use amendment can come into conflict with this objective or its policy. As explained at the ALJ hearing, “[n]either the industrial category nor the restricted commercial category are water-dependent categories ... whether it’s restricted commercial or industrial land use is irrelevant for this objective, because neither one is a water-dependent classification.” Further, there is no land use classification that permits water dependent uses.
*740 The majority substitutes the ALJ’s finding with the testimony of the petitioners’ witness that “the use of this parcel under industrial must be water dependent and the use under the change need not be.” The Comprehensive Plan refutes this assertion because it does not define the industrial classification or the restricted commercial classification as “water-dependent.” Therefore, the majority’s assertion improperly relies on a zoning analysis and not a planning analysis.
Port of Miami River Objective[5]
Port of Miami River Objective 3.3 states “The City of Miami shall coordinate its Port of Miami River planning activities with those of port facilities and regulators including the U.S. Corps of Engineers, U.S. Coast Guard, and Miami-Dade County’s Port of Miami.”
The ALJ found that the petitioners failed to present any evidence concerning a lack of coordination relative to the FLUM Amendment. There was competent evidence in the record that the Planning Department coordinated with the Miami River Commission, and then recommended accordingly to the City Commission.
Thus, the ALJ properly considered only those provisions of the Comprehensive Plan relating to planning issues. Further, the ALJ had competent substantial evidence that the FLUM Amendment was not inconsistent with the relevant portions of the Comprehensive Plan. Testimony from the record shows that the FLUM Amendment advanced the majority of relevant Comprehensive Plan goals, policies, and objectives. Accordingly, I would affirm the ALJs conclusion that the FLUM Amendment was consistent with the Comprehensive Plan.
Concurrency Analysis
I also disagree with the majority’s analysis of the concurrency requirements relating to this FLUM amendment. Again, the majority fails to distinguish between the land use planning decision and any future zoning decision.
Florida’s Local Government Comprehensive Planning and Land Development Regulation Act requires that comprehensive plans consider the water supply sources necessary to meet and achieve existing and projected water use demands. § 163.3167(13), Fla. Stat. (2004). Further, section 163.3180, Florida Statutes (2004), provides that concurrency requirements regarding sanitary sewer, solid waste, drainage, potable water facilities be met prior to any development.
As related to sanitary sewer, solid waste, drainage, and potable water, the statute states that appropriate facilities “shall be in place and available to serve new development no later than the issuance by the local government of a certificate of occupancy or its functional equivalent.” § 163.3180(2)(a). This statute clearly indicates that concurrency must be met on a time frame that relates to development of a property. Not surprisingly, the specific development data the majority asks for is not part of the record in this land use decision.
Florida Administrative Code Rule 9J-5.005(2)(a) states, “[a]ll goals, objectives, policies, standards, findings and conclusions ... within plan amendments and their support documents, shall be based upon relevant and appropriate data and *741 the analyses applicable to each element.” The rule further states that the Planning Department will determine whether the data was collected and applied in a professionally accepted manner. Therefore, the rule requires that any assertion in the Comprehensive Plan or amendment be based on data which the Planning Department determines to be from a professionally acceptable source. Here, the AD, a Planning Department employee, testified that the data used was professionally acceptable. The majority finds that the testimony of the petitioners’ witness carries more weight on the issue. However, the petitioners’ witness is not a Planning Department employee. This substitution deprives the Planning Department of an express statutory responsibility to determine whether data is professionally acceptable.
Additionally, the FLUM Amendment support documents did not mislead the City Commission by making unfounded assertions. In fact, the FLUM Amendments support documents explicitly stated when data was not known or was unavailable. The FLUM Amendments supporting documents met the requirement of only relying on data from professional sources. Therefore, concurrency requirements for the FLUM Amendment were clearly satisfied.
Conclusion
After a careful review of the record, I agree with Judge Wells’s dissent from the denial of rehearing en banc. The ALJ properly considered only those provisions of the Comprehensive Plan relevant to land use planning. There is competent, substantial evidence to support the ALJ’s findings that the FLUM Amendment is consistent with the Comprehensive Plan. Further, the City relied on appropriate data to make its concurrency determination. Accordingly, I would affirm the Department’s order.
SHEPHERD, J., concurs.

. The City also approved a zoning change from SD 4.2 Waterfront Industrial to C-l Restricted Commercial, and a major use special permit to allow Balbino to build two 12-story residential buildings, marina, river walk promenade, and commercial office space.

. I concur with Judge Wells's dissent that the ALJ not only officially recognized this Court’s decision in Payne II, but considered and applied the broad definition of the Port of Miami River from Payne II. The ALJ did not consider most of the provisions because they were applicable to zoning only.