IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

THE TOWN OF PONCE INLET,
A FLORIDA MUNICIPALITY,

      Appellant,

v.

PACETTA, LLC, A FLORIDA LIMITED
LIABILITY COMPANY, DOWN THE
HATCH, INC., A FLORIDA CORPORATION,
AND MAR-TIM, INC., A FLORIDA
CORPORATION,

      Appellees.

Case No.  5D14-4520

_____/

Opinion filed June 16, 2017

Appeal from the Circuit Court
for Volusia County,
Terence R. Perkins, Judge.

Elliot H. Scherker and Brigid F. Cech
Samole, of Greenberg, Traurig, P.A.,
Miami, and Kimberly S. Mello, of Greenberg
Traurig, P.A., Tampa, and Clifford B.
Shepard, of Shepard, Smith & Cassady,
P.A., Maitland, and Noah C. McKinnon, Jr.,
and Abraham C. McKinnon, of McKinnon &
McKinnon, P.A., Ormond Beach, for
Appellant.

Amy Brigham Boulris, Kenneth B. Bell and
Lauren L. Purdy, of Gunster, Yoakley &
Stewart, P.A., Miami, and Peter B. Heebner
and John N. Upchurch, of Heebner,
Baggett, Upchurch & Garthe, P.L., Daytona
Beach, for Appellees.

Nancy E. Stroud, Counsel for American Planning Association, Boca Raton, Amicus Curiae for Appellant.

Mark Miller and Christina M. Martin, of Pacific Legal Foundation, Palm Beach Gardens, Amicus Curiae for Appellees.

LAMBERT, J.

The parties in this case make their third appearance before this court. In this appeal, the Town of Ponce Inlet ("Town") appeals a multi-million-dollar second amended final judgment entered following a jury trial on damages arising from an inverse condemnation claim as well as an earlier order resulting from a bench trial on liability ("liability order") that found in favor of the Appellees: Pacetta, LLC; Down the Hatch, Inc.; and Mar-Tim, Inc. (collectively "Pacetta"). To explain our decision today, we first chronologically discuss the factual and procedural history involving these parties as well as the significance and intertwinement of our two earlier opinions regarding these parties.

The Town of Ponce Inlet is a small, mostly residential community in Volusia County, located on the southern tip of a peninsula south of Daytona Beach. The main peninsula of the town is bordered to the west by the Halifax River, to the east by the Atlantic Ocean, and to the south by the Ponce Inlet, connecting the river to the ocean. There is very little commercial development in the town, other than as described by the trial court as "some limited retail establishments." The primary commercial developments in the town are three riverfront enterprises, with Pacetta's property being the middle of the three riverfront enterprises.

The origin of the dispute between the parties began in 2003. That year, Town adopted a Comprehensive Land-Use Plan, which was accepted and approved by the

2

State of Florida. The plan created a "riverfront commercial" land-use category that placed limits on both the height and square footage of commercial buildings, and it also prohibited the construction of new marinas and the expansion of existing marinas. In January 2004, Town enacted a Riverfront Overlay District ("ROD"), which limited the use of dry stack boat storage facilities.

In June 2004, Pacetta, through its two controlling principals, Lyder and Simone Johnson, purchased the first two parcels of property at issue, with parcel 1 being situated in the riverfront commercial zoned area and parcel 2 being located in an area zoned medium-density residential. The original intent for this purchase was to build a "dream home," along with some possible other residential development.

The following year, Pacetta, with encouragement from Town, decided to broaden its development into what the trial court described in its liability order as a "delightful mixed-use planned waterfront development." However, to do so required the acquisition of additional properties. To that end, in August 2005, Pacetta purchased parcels 3 and 4, and in March 2006, it purchased parcels 5–9, on which were situated the commercial establishments Sea Love Boat Works and the Down the Hatch restaurant. Finally, in May 2006, Pacetta purchased parcel 10, which was zoned multi-family and permitted for nineteen townhouses and an equivalent number of boat slips. As a result of these purchases, Pacetta's ten parcels were contiguous to each other and encompassed sixteen acres of land.

Pacetta then began to prepare a plan to develop all ten parcels as a waterfront project to be known as the Villages of Ponce Park. As found by the trial court, Pacetta anticipated that "it would be entitled to build and sell a series of townhomes on the south end of the acreage, would be able to continue to run and expand the restaurant," Down

3

the Hatch, "and would be able to build and operate a dry slip stacked storage facility on the north end of the property in an area historically dedicated to boat building, maintenance and repair." However, Pacetta's proposed development was not consistent with, and in fact was forbidden by, the Town's 2003 Comprehensive Land-Use Plan and the 2004 ROD. This was significant because "[a] local comprehensive land use plan is a statutorily mandated legislative plan to control and direct the use and development of property within a county or municipality." *Citrus Cty. v. Halls River Dev., Inc.*, 8 So. 3d 413, 420 (Fla. 5th DCA 2009) (citing § 163.3167(1), Fla Stat. (2005); *Machado v. Musgrove*, 519 So. 2d 629, 631–32 (Fla. 3d DCA 1987)). The plan is similar to a constitution for all future development within the government boundary. *Id.* at 420-21 (citing *Machado*, 519 So. 2d at 632). Where, as here, a Comprehensive Land-Use Plan has been adopted, "'all development undertaken by, and all actions taken in regard to development orders by, governmental agencies in regard to land covered by such plan' must be consistent with that plan." *Id.* at 421 (quoting § 163.3194(1)(a), Fla. Stat. (2005)).

Therefore, in order to proceed with its planned waterfront development, Pacetta needed Town to amend its Comprehensive Land-Use Plan and to essentially relax the existing ROD zoning. Town began taking necessary steps to amend its plan to accommodate Pacetta's development project. In return, Town had certain requirements of Pacetta for the project, which were amenable to Pacetta. Pacetta invested significant time, effort, and money in its attempt to implement the project. As found by the trial court, "between June of 2004 and 2008, there does not appear to be any meaningful dispute that [Pacetta] and the Town had a harmonious convivial relationship that might even be described as pacesetting. While some cracks began to form in late 2007, the cooperation between [Pacetta] and the Town [toward developing this project] was unprecedented."

4

What occurred in 2007 was the result of a growing movement by some of Town's officials and other citizens opposing Pacetta's project. In August 2007, Town passed an ordinance proposing an amendment to its town charter to allow "citizens' initiatives . . . in conjunction with land actions." On October 17, 2007, Town then passed a year-long moratorium on any building. Despite the foregoing, in March 2008, Town's council approved an amendment to its Comprehensive Land-Use Plan that deleted the square foot limits on commercial buildings and allowed both wet and dry boat storage in the riverfront commercial area, two requirements essential for Pacetta to proceed with the waterfront project. As it was required to do, Town submitted the Comprehensive Land-Use Plan amendment to the State of Florida Department of Community Affairs ("DCA") for review.[1] The DCA thereafter provided Town with its objections, recommendations, and comments. After the plan was modified to address the DCA's objections, it was submitted back to the town council for a second reading and for final approval of the amendment to the Comprehensive Land-Use Plan.

In the meantime, during the fall of 2008, an election for town council seats was held. The ballot also included a referendum resulting from a citizens' initiative petition to amend the town charter so that land-use restrictions already in place would be elevated to the status of an immutable charter provision that, in this case, would effectively bar or

---

[1] At the time, there was a two-stage process for amending a Comprehensive Land-Use Plan under chapter 163, Florida Statutes. *Martin Cty. v. Yusem*, 690 So. 2d 1288, 1294 (Fla. 1997). First, the local government determines whether to transmit the proposed amendment for further review. *Id.* (citing § 163.3184(3), Fla. Stat. (1989)). If transmitted to the DCA, the DCA, after receiving the amendment, provides the local government with its objections, recommendations for modifications, and comments from any other regional agencies. *Id.* (citing § 163.3184(4), Fla. Stat. (1989)). The local government then has three options: (1) adopt the amendment; (2) adopt the amendment with changes; or (3) not adopt the amendment. *Id.* (citing § 163.3184(7), Fla. Stat. (1989)). Amendments to comprehensive plans are legislative policy decisions. *Id.* at 1293–94.

5

restrict Pacetta's effort to construct and operate dry boat storage facilities on its property. This prohibition was significant to Pacetta because the operation of a large dry stack boat storage facility on portions of its property made the entire project economically feasible. Pending the results of the referendum vote, on October 15, 2008, the Town adopted a second year-long moratorium on building.

The referendum passed by a 62–38% vote. Additionally, three citizens who were opposed to the Pacetta project were elected to the town council. The outgoing town council rejected, on its second reading, the previously acceptable amendment to the Comprehensive Land-Use Plan. Thereafter, pursuant to the aforementioned vote, Town adopted a revised plan and conforming ordinance that incorporated the charter amendment from the citizens' initiative, effectively prohibiting Pacetta's development project.

Pacetta sued Town to invalidate the town charter amendment and the ordinance that amended the Comprehensive Land-Use Plan to include these restrictions. Pacetta argued that the charter amendment and the conforming ordinance affected only its singular sixteen-acre parcel of property and, thus, violated section 163.3167(12), Florida Statutes (2008), which, at that time, prohibited local initiatives or referenda in regard to development orders or comprehensive plan amendments affecting five or fewer "parcels," as that term is defined by section 163.3164(16). *See Preserve Palm Beach Political Action Comm. v. Town of Palm Beach*, 50 So. 3d 1176, 1179 (Fla. 4th DCA 2010) ("Section 163.3167(12) rightfully protects the small landowner from having to submit her development plans to the general public and ensures that those plans will be approved or not, instead, by the elected officials of the municipality in a quasi-judicial process."). The trial court granted summary judgment in favor of Pacetta, invalidating the town

charter amendment and conforming ordinance because it improperly affected five or fewer parcels of property.

In *Town of Ponce Inlet v. Pacetta, LLC*, 63 So. 3d 840 (Fla. 5th DCA 2011) ("*Pacetta I*"), this court affirmed the final summary judgment. We first addressed whether Pacetta's sixteen acres of land were properly considered as ten separate parcels or one parcel. *Pacetta I*, 63 So. 3d at 840–42. Section 163.3164(16), Florida Statutes (2008), defined a "parcel of land" as:

> any quantity of land capable of being described with such definiteness that its locations and boundaries may be established, which is designated by its owner or developer as land to be used, or developed as, a unit or which has been used or developed as a unit.

Pacetta took the position that although it purchased ten separate tracts or parcels of property, its combined property constituted one unit or one parcel of land. *Pacetta I*, 63 So. 3d at 840–41.

In affirming the summary judgment, we held that although Pacetta had purchased the various tracts of land from the prior owners, the summary judgment evidence filed clearly showed that this was a contiguous sixteen-acre parcel of land that had been designated by Pacetta as land to be used or developed as a single unit. *Id.* at 841. Therefore, we concluded that "[b]ecause the evidence was uncontroverted that the citizens' initiative referendum affected five or fewer parcels, the trial court correctly determined that the referendum violated section 163.3167(12), and declared it invalid." *Id.* at 842 (footnote omitted). As a result, the ordinance conforming the Comprehensive Land-Use Plan to the referendum was also invalidated. *Id.*

In May 2010, Pacetta filed the instant suit. In its operative amended complaint filed against Town, Pacetta sought compensation for an "unconstitutional 'taking'/inverse

7

condemnation" in violation of the United States Constitution and the Florida Constitution (count I), a denial of substantive due process and equal protection under both constitutions (count II),[2] a denial of procedural due process under both constitutions (count III), and for statutory damages for the "inordinate burdening" of its real property by Town's regulations pursuant to the Bert J. Harris, Jr., Private Property Rights Protection Act ("Harris Act"), as codified in section 70.001, Florida Statutes (2010) (count IV). In January 2012, the case proceeded to a non-jury trial on the issue of liability, and following twelve days of testimony and argument, the court entered the aforementioned liability order.

The trial court first determined that the four causes of action asserted by Pacetta proceeded on the single assumption that Pacetta "had a vested interest in the option or obligation to construct and operate the mixed use planned waterfront development that had been discussed and submitted in concept form to the Town." The trial court acknowledged, and neither party disputes, that Pacetta's proposed development was absolutely prohibited under Town's 2003 Comprehensive Land-Use Plan and the 2004 ROD. The court related that the threshold issue that it had to decide was essentially whether Pacetta had established "a vested right in [its] favor based on the concept of equitable estoppel, to nevertheless construct and build this mixed use planned waterfront development." Stated differently, the trial court believed the dispositive issue before it was whether Pacetta had proved that it had the vested right under the doctrine of equitable estoppel to require Town to amend its Comprehensive Land-Use Plan and the ROD to allow it to build its proposed waterfront development. As the trial court explained, the

---

[2] Pacetta's equal protection claim under state law was dismissed prior to trial and is not contested in this appeal.

8

doctrine of equitable estoppel precludes a municipality from exercising its zoning power where the "property owner (1) [relying] in good faith (2) upon some act or omission of the government (3) has made such a substantial change in position or has incurred such extensive obligations and expenses that it would be highly inequitable and unjust to destroy the right he acquired." *Hollywood Beach Hotel Co. v. City of Hollywood*, 329 So. 2d 10, 15–16 (Fla. 1976) (quoting *City of Hollywood v. Hollywood Beach Hotel Co.,* 283 So. 2d 867, 869 (Fla. 4th DCA 1973)).

The trial court found in Pacetta's favor, with minor exceptions, on all four counts. As to the regulatory taking/inverse condemnation claim, the court divided the sixteen acres into the ten separate parcels that Pacetta originally purchased and evaluated whether there had been a "taking" as to each individual parcel.  The court found that there had been a "taking" as to parcels 1, 3, 4, and 10, but concluded that there had been no "taking" as to parcels 2, 5, 6, 7, 8, and 9.  As to these latter parcels, the court found that under counts II and III, Pacetta was entitled to damages based on Town's equal protection violation and the violation of Pacetta's substantive and procedural due process rights. Lastly, the court found that Pacetta had clearly established that the actions of Town had inordinately burdened Pacetta's property under the Harris Act.

Pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(C)(viii), Town appealed that portion of the non-final liability order finding liability under the Harris Act. In *Town of Ponce Inlet v. Pacetta, LLC*, 120 So. 3d 27 (Fla. 5th DCA 2013) ("*Pacetta II"*), Town argued that the trial court erred as a matter of law in finding that Pacetta had established by equitable estoppel a vested right to essentially require Town to amend its 2003 Comprehensive Land-Use Plan so that Pacetta could develop its sixteen acres consistent with the proposed 2008 amendment to the plan, which initially had been

approved on first reading but was later rejected on the second reading. *Pacetta II*, 120 So. 3d at 29.

This court reversed the liability order finding Town liable to Pacetta under the Harris Act. *Id.* at 29–31. We explained that

> equitable estoppel can be invoked only when a property owner relies in good faith upon some government action. No such good faith reliance was established in this case. At the time Pacetta purchased its properties, [Town's] Comprehensive Land-Use Plan expressly prohibited the type of development which Pacetta proposed for its properties. Any assurances by town officials that the Comprehensive Plan would be amended so as to authorize Pacetta's development plans could not be relied upon in good faith by Pacetta, since town officials lacked the authority to unilaterally amend the Comprehensive Land-Use Plan. *See* § 163.3184(4), (15), Fla. Stat. (2009) (requiring any proposed change to Comprehensive Plans to be subject to approval by various government agencies). Recognition of a vested right based on assurances from town officials to amend the Comprehensive Land-Use Plan would also be in violation of public policy, in light of the public hearings and other government approvals required for Comprehensive Plan amendments.

*Id.* at 30–31.

Upon remand from *Pacetta II*, Town moved the trial court to reconsider its liability order as to the remaining counts. Town argued that the trial court's findings of liability against it on all counts were solely predicated on the court's threshold finding that Pacetta established a vested right to build its project in violation of the 2003 plan based upon the equitable estoppel doctrine and that, as a result of *Pacetta II*, this avenue was no longer viable. The trial court, while acknowledging that its liability order was no longer sustainable based upon the equitable estoppel theory that was now contrary to the "law of the case," nevertheless denied the motion, concluding in an unelaborated order that its

10

remaining findings in the liability order provided "sound support" for Pacetta on the three remaining counts.

The jury trial on the issue of damages occurred in September 2014. At the close of Pacetta's case-in-chief, Town moved for a directed verdict on counts II and III, arguing that Pacetta failed to produce any evidence of damages based on the alleged due process or equal protection violations. In response, Pacetta requested that, if the court was inclined to grant the motion, it dismiss counts II and III without prejudice, rather than directing a verdict in Town's favor. The trial court declined Pacetta's request and granted Town's motion for directed verdict on both counts without qualification. The jury thereafter returned its verdict on the "taking" count, finding the relevant fair market value of parcels 1 and 10 to be $18 million and the relevant fair market value of parcels 3 and 4 to be $1.85 million.[3] After computing prejudgment interest, the court entered final judgment in favor of Pacetta in the amount of $30,775,248.29. As to counts II and III, the court receded from its earlier directed verdict ruling and entered an amended final judgment finding in favor of Town on Pacetta's state constitution claims but keeping intact Pacetta's federal constitutional due process and equal protection causes of action. This appeal followed.

---

[3] The jury's determination of the parcels' fair market values was based upon the fair market values as of January 17, 2007, the date on which the trial court found that the taking had occurred.

<u>Pacetta's Regulatory Taking/Inverse Condemnation Claim</u>

The Fifth Amendment to the United States Constitution prohibits the government from taking private property "for public use without just compensation."[4] The typical taking is accomplished through an eminent domain action, which provides for a "direct government appropriation or physical invasion of private property." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005). Here, there has been no physical invasion of Pacetta's property by Town. Instead, Pacetta asserted that Town's actions resulted in an inverse condemnation of its properties, which is defined as "a cause of action by a property owner to recover the value of property that has been *de facto* taken by an agency having the power of eminent domain where no formal exercise of that power has been undertaken." *Ocean Palm Golf Club P'ship v. City of Flagler Beach*, 139 So. 3d 463, 471 (Fla. 5th DCA 2014) (quoting *Osceola Cty. v. Best Diversified, Inc.*, 936 So. 2d 55, 59-60 (Fla. 5th DCA 2006)). A regulatory taking can be either total or partial. In a "total" or "per se" taking, the government's regulations effectively deny *all* economically beneficial or productive use of the property. *Id.* (citing *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992)). In a "partial" or "as-applied" taking under *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978), the court must evaluate: "(1) the economic impact of the regulation on [the property owner]; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the

---

[4] The Federal Takings Clause applies to the states through the Fourteenth Amendment. *St. Johns River Water Mgmt. Dist. v. Koontz*, 77 So. 3d 1220, 1226 (Fla. 2011), *rev'd on other grounds*, 133 S. Ct. 2586 (2013); *see also* Art. X, § 6(a), Fla. Const.

governmental action."[5]  *Id.* (quoting *Leon Cty. v. Gluesenkamp*, 873 So. 2d 460, 467 (Fla. 1st DCA 2004)).

The first step for a court in analyzing whether there has been a taking under *Lucas* or *Penn Central* is to "define what constitutes the relevant parcel before [it] can evaluate the regulation's effect on that parcel." *Dist. Intown Props. Ltd. P'ship v. Dist. of Columbia*, 198 F.3d 874, 879 (D.C. Cir. 1999).  Stated differently, the subject of the alleged taking must first be determined.  *Ocean Palm*, 139 So. 3d at 468 n.7.  Town argues that the proper analysis is to treat the sixteen acres as one whole parcel.  Pacetta urges that the trial court correctly treated the property as ten separate parcels, as the properties were purchased as separate and distinct lots.  Based upon the doctrine of judicial estoppel, we hold that the trial court erred in not treating Pacetta's land as one parcel.

Judicial estoppel provides that "[o]ne who assumes a particular position or theory in a case," and secures court action thereby, "is judicially estopped in a later phase of that same case, *or in another case*, from asserting any . . . inconsistent position toward the same parties and subject matter."  *In re Adoption of D.P.P.*, 158 So. 3d 633, 639 (Fla. 5th DCA 2014) (emphasis added) (citing *Federated Mut. Implement & Hardware Ins. Co. v. Griffin*, 237 So. 2d 38, 41-42 (Fla. 1st DCA 1970)).  As previously discussed, in *Pacetta I*, Pacetta took the position that its entire sixteen-acre property constituted one parcel of land to be developed as a single unit. Having successfully defeated the citizens' initiative referendum in that case based upon its position that its property was one parcel or unit, Pacetta is estopped from taking the diametrically opposite position here.  Additionally, in

---

[5] There is also a fourth type of "taking," referred to as a "land-use exaction" taking, that is not applicable here.  *See Dolan v. City of Tigard*, 512 U.S. 374 (1994); *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825 (1987).

the operative complaint, Pacetta specifically alleged that it "is seeking development of the parcels as a single parcel and is thus directly impacted by [Town's] regulations of all the parcels." "When a 'developer treats several legally distinct parcels as a single economic unit, together they may constitute the relevant parcel.'" *Lost Tree Vill. Corp. v. United States*, 707 F.3d 1286, 1293 (Fed. Cir. 2013) (quoting *Forest Props., Inc. v. United States*, 177 F.3d 1360, 1365 (Fed. Cir. 1999)). Having determined that the subject of the alleged taking is one parcel, we next address whether there has been a "total" or "partial" taking of this parcel of property.

<u>"Total" Taking</u>

In its complaint, Pacetta alleged that Town's actions have deprived Pacetta of all "economically viable beneficial use of its property since 2004," which, pursuant to *Lucas*, Pacetta must prove for a "total" regulatory taking. *See* 505 U.S. at 1015. This standard applies to the relevant parcel as a whole because "'[t]aking' jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated." *Penn Cent.*, 438 U.S. at 130. Here, the trial court found that six of the ten individual parcels maintained economically beneficial uses. The trial evidence established that Pacetta paid significant sums of money for these six parcels and that whatever were the permissible uses under the 2003 Comprehensive Land-Use Plan for these properties at the time of purchase remain intact. Because these six individual parcels with economic value must be considered as part of the larger parcel, we conclude that there has been no deprivation of *all* economically beneficial uses of the parcel, and therefore, we find that no total taking under *Lucas* has been established.

<u>"Partial" Taking</u>

In its liability order, the trial court referred to the criteria enunciated in *Penn Central* that must be analyzed in determining whether a "partial" regulatory taking occurred: specifically, "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Ocean Palm*, 139 So. 3d at 473 (quoting *Gluesenkamp*, 873 So. 2d at 467). As previously discussed, following *Pacetta II*, Town moved the trial court to reconsider its liability order because the equitable estoppel predicate upon which recovery for each count was based, including the taking claim in count I, was determined to be inapplicable. Following a hearing, the court entered an order denying the motion. The court made no additional factual findings in its written order regarding the partial taking, determining that there were sufficient findings in its liability order to support finding in favor of Pacetta on this count.

We have carefully reviewed the transcript from the hearing on Town's motion for reconsideration. At no point during the hearing was an analysis of the three-pronged standard for finding a "partial" taking under *Penn Central* ever discussed. Moreover, in its liability order, the trial court repeatedly addressed whether there had been a "total" taking, with no mention of a partial taking. Additionally, the court's analysis focused on whether there was a total taking of each individual parcel and misapplied the *Penn Central* standard in determining whether there was a partial or as-applied taking. "In an as-applied claim, the landowner challenges the regulation in the context of a concrete controversy specifically regarding the impact of the regulation on a particular parcel of property." *Collins v. Monroe Cty.*, 999 So. 2d 709, 713 (Fla. 3d DCA 2008) (citing *Taylor*

15

*v. Vill. of N. Palm Beach*, 659 So. 2d 1167, 1167 (Fla. 4th DCA 1995)). In that we have now determined that the entire sixteen acres of land is to be considered as one parcel and that there is no "total" taking under *Lucas*, we find it necessary to reverse the liability order and to remand for a new trial on whether there has been a "partial" taking under the *Penn Central* criteria as applied to this one sixteen-acre parcel of land. Moreover, because the jury verdict awarding damages for the "taking" of separate parcels is premised upon the evaluation of individual parcels and the misapplication of the *Penn Central* standard, we reverse the second amended final judgment awarding damages.

On remand, the court shall address two other issues regarding Pacetta's partial taking claim. First, the court must more specifically address whether the claim is ripe. "[A] takings claim challenging the application of land-use regulations is not ripe unless 'the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue.'" *Palazzolo v. Rhode Island*, 533 U.S. 606, 618 (2001) (quoting *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985)). "A final decision by the responsible state agency informs the constitutional determination whether a regulation has . . . defeated the reasonable investment-backed expectations of the landowner to the extent that a [partial] taking has occurred." *Id.*

Town argues that the "partial" taking claim is not ripe because Pacetta failed to submit at least one meaningful application for developmental approval specifying its proposed uses for the property. *See Taylor*, 659 So. 2d at 1172–74. This application provides the land-use authority, i.e. Town, the ability "to exercise its discretion in considering development plans, 'including the opportunity to grant any variances or waivers allowed by law.'" *Collins*, 999 So. 2d at 716 (quoting *Palazzolo*, 533 U.S. at 620–

16

21). We conclude that the trial court's findings of fact in its liability order were unclear as to whether Pacetta had in fact submitted an application for development. Because the government "must arrive at a 'final, definitive position' on the 'nature and extent' of permitted development before a court may adjudicate the 'constitutionality of the regulations that purport to limit it,'" *Martin Cty. v. Section 28 P'ship*, *Ltd.*, 676 So. 2d 532, 538 (Fla. 4th DCA 1996) (citations omitted) (quoting *Taylor*, 659 So. 2d at 1173), on remand, the trial court shall make a specific factual determination as to whether Pacetta's partial taking claim is ripe for adjudication by having submitted the requisite meaningful application.

Finally, if the court finds that Pacetta did not file this application for development, the trial court must also address whether the "futility" exception to the ripeness doctrine applies. Under certain circumstances, "where the governmental agency effectively concedes that any other development would be impermissible, this can negate the requirement of pursuing further administrative remedies and the governmental action is effectively treated as a final decision." *Taylor v. City of Riviera Beach*, 801 So. 2d 259, 263 (Fla. 4th DCA 2001) (quoting *City of Riviera Beach v. Shillingburg*, 659 So. 2d 1174, 1181 (Fla. 4th DCA 1995)). Accordingly, the trial court on remand should determine whether Town has effectively determined that any other development of Pacetta's property would be impermissible, thus causing any application by Pacetta for development or for an amendment to the plan to be futile.[6]

---

[6] The trial judge who presided over the liability trial, received all of the evidence during that twelve-day trial, and entered the liability order also subsequently granted a motion to disqualify himself in April 2014, which was after he denied Town's motion to reconsider the liability order upon remand from *Pacetta II* but before the jury trial on damages (which was consequently held before Judge Perkins). Therefore, because the first judge is not available to enter an amended liability order based upon his recollection

<u>Pacetta's Federal Due Process/Equal Protection Claims</u>

Town argues that the trial court erred when it did not enter judgment on Pacetta's due process and equal protection claims asserted under the Federal Constitution but only entered judgment in Town's favor on Pacetta's claims for substantive and procedural due process violations under the Florida Constitution. Town contends that Pacetta pursued both its state and federal constitutional claims in this state court action and that when Pacetta failed to present at trial any evidence of damages on either count, the trial court erred post-trial when it entered final judgment only on the state constitutional claims, despite having granted Town's motion for directed verdict at trial. We agree.

In count II of its operative complaint, Pacetta alleged that the various actions of Town denied it substantive due process and equal protection in violation of article I, section 9 of the Florida Constitution and the Fifth and Fourteenth Amendments of the United States Constitution. In count III, Pacetta asserted that the same actions of Town violated Pacetta's rights to procedural due process under the same provision of the Florida Constitution as well as the Fourteenth Amendment and title 42, section 1983, United States Code. Pacetta did not seek injunctive relief on either of these two counts; instead, it demanded judgment for damages and a jury trial. When a party is challenging "a regulation, statute or land use plan as a denial of substantive or procedural due process, the focus is on whether there has been an invalid exercise of police power. If proven, the remedy is monetary damages." *Taylor*, 659 So. 2d at 1170.

Following the bench trial on liability, the court entered the now challenged liability order in which, among other things, it found in favor of Pacetta on its constitutional claims

---

of the evidence and the law of the case provided in this opinion, a new trial on the single claim that a "partial" taking has occurred is necessary.

18

asserted in counts II and III, but only as to parcels 2, 5, 6, 7, 8, and 9. The court specifically found that Town had violated Pacetta's constitutional rights by: (1) colluding with citizens' groups in creating an "illegal charter amendment"; (2) committing a "series of illegal acts," including the "illegal referendum and amendment of the Town charter to interfere with Pacetta" and "other conduct" involving only the Pacetta property; and (3) "refusing to accept applications for building projects since 2004."[7] The court concluded this portion of the liability order by stating that damages, if any, on these two counts would be determined by a jury.

At the jury trial, at the conclusion of Pacetta's case-in-chief, Town moved for an unqualified directed verdict on both counts. The trial court inquired of Pacetta's counsel why the motion should not be granted when there was no evidence presented as to any separate or independent damages for either count. Counsel responded that the court could grant Town's motion but requested that the court do so as a "dismiss[al]" "without prejudice," rather than a directed verdict, to preserve Pacetta's ability to proceed in an action "unrelated to what's going on [in the present trial]." The court granted Town's motion without any of the qualifications sought by Pacetta.

Pacetta then argued post-trial that the trial court could not adjudicate its federal constitutional claims because it reserved its right to assert its federal constitutional claims in federal court with the following allegation in its complaint:

> Reservation of Federal Rights
>
> 89. Pacetta, by pursuing the claims herein in the State of Florida court, reserves its right to the disposition of the entire

---

[7] The trial court found in favor of Town on these two counts regarding Pacetta's allegations in its complaint that Town had violated Pacetta's due process and equal protection rights by "creating an ROD that impacted only Pacetta properties and by using serial building moratoria to deprive Pacetta of its investment-backed expectations."

19

> case by the state court, and preserves its access to a federal forum to assert its federal constitutional rights.

This pleading is typically referred to as an "*England* reservation." *See England v. La. State Bd. of Med. Exam'rs*, 375 U.S. 411, 421–22 (1964) (holding that a party may inform the state courts that he or she is exposing the federal claims there only for the purpose of complying with *Government and Civic Employees Organizing Committee, CIO v. Windsor*, 353 U.S. 364 (1957), and that he or she intends, should the state courts hold against him or her on the question of state law, to return to the district court for disposition of his or her federal contentions). Nevertheless, this reservation is not absolute and is dependent upon the party making the reservation and not thereafter asking the state court to resolve the federal issue or issues that had previously been reserved. *San Remo Hotel, L.P. v. City & Cty. of San Francisco, Cal.*, 545 U.S. 323, 344-46 (2005).

Here, Pacetta pursued both its state and federal due process claims and its federal equal protection claim and received an unqualified finding in its favor in the liability order on both counts, with the court specifically stating that the issue of damages on the claims would be determined by the jury. At the hearing held during trial on Town's motion for directed verdict, Pacetta's counsel did not argue that it had established monetary damages on either count and notably made no argument that a directed verdict should not be entered on its federal due process and equal protection constitutional claims based on its "*England* reservation." Under these circumstances, the failure of such proof of damages requires the granting of a directed verdict on all claims asserted in both counts. *Morgan Stanley & Co. v. Coleman (Parent) Holdings Inc.*, 955 So. 2d 1124, 1131 (Fla. 4th DCA 2007).

We recognize, as agreed by both parties in their briefs, that the federal court will make its own determination on whether Pacetta effectively preserved its right to pursue its federal due process and equal protections claims in federal court. Nevertheless, we conclude that the trial court erred in not entering final judgment in favor of Town on the federal constitutional claims asserted by Pacetta in counts II and III. On remand, the trial court is directed to enter an amended final judgment in favor of Town on those two counts, unqualified and not restricted to Pacetta's state law claims, consistent with this opinion.

Accordingly, for the reasons expressed herein, we reverse the liability order and the final judgment for damages in favor of Pacetta. We remand this case for a new trial on liability and, if thereafter appropriate, damages on count I, limited to determining whether a "partial" or "as-applied" taking has occurred in reference to the single relevant parcel, including the preliminary determination of whether such a claim is ripe in this case pursuant to Pacetta's sufficient application for development or the applicability of the "futility" exception. We also remand for the entry of an amended final judgment in favor of Town on counts II and III.[8]

REVERSED and REMANDED, with directions.

SAWAYA and EVANDER, JJ., concur.

---

[8] Based on our ruling, we decline to address any issues raised by Town regarding the jury trial on damages.

21